## Couch *versus* Sutton *et al.*

1. Declarations of the grantee of land made after the conveyance, are admissible, with corroborating acts and circumstances, such as the grantor's continuance in possession, and the like, to show that a deed, absolute on its face, was a mortgage.

2. A married woman, being bound like others by the recording acts, may be estopped from claiming under an unrecorded deed, if she sees one in possession and making valuable improvements, under a title that is good against any other title that she may have, and he has no notice or knowledge of her title under such deed.

3. Where a bill is filed against a married woman to perpetuate evidence against a title that she might set up, and her husband is not made a party, because he is supposed and alleged in the bill to be dead, and at the taking of the evidence counsel appears for the defendants, and the husband also appears and is examined as a witness, and the decree of perpetuation is made without objection, because the husband is not a party with his wife, it is too late to raise the objection when the testimony is offered to be read.

4. The District Court has jurisdiction of a case to perpetuate testimony.

ERROR to the District Court of *Allegheny county*.

Catharine Couch, widow of Philip Couch, deceased, brought this action of ejectment against John Sutton, the landlord of the other defendants, for recovery of a tract of land situate in St. Clair township, Allegheny county, containing eighty-nine acres. Both parties claim title under Philip Couch. On the 8th day of August, 1812, Philip Couch and Catharine his wife, by a general warranty deed of that date, (recorded the 13th of August, 1812,) granted and conveyed the land in dispute to John Conner in fee, for the consideration of eight hundred and seventy-five dollars.

On the 19th day of April, 1826, John Conner and wife, by general warranty deed of that date, acknowledged April 22, 1826, granted and conveyed said premises to Catharine Couch in fee, for the consideration of $700, subject to the following charge, viz: "Nevertheless allowing Philip Couch, her husband, to have a sufficient maintenance from it while he lived." This deed was never recorded. Philip Couch died 30th of January, 1853, intestate, leaving Catharine his widow and five children surviving him. After offering evidence of the foregoing facts, plaintiff rested.

The defendants claimed that the deed of Philip Couch and wife

[Couch v. Sutton et al.]

to John Conner, although an absolute and indefeasible deed on its face, was intended by the parties as a mortgage; and to sustain this issue on their part, offered in evidence the depositions of Robert Jewell and Sarah Jewell, which were objected to by plaintiff and admitted by the court, and bills of exceptions sealed:

*Sarah Jewell*, of sound mind and lawful age, being first duly sworn according to law, deposeth and saith as follows:

"I was acquainted with both; Catharine Couch came to our house while we lived on the place now in dispute, and she told me that Philip Couch and her had been at her father's, and that they had got Philip Couch to sign the papers to John Conner, and if Philip had known what he was doing at the time, he would not have done it; she said he had signed his property to her father, and that Philip Couch would be none the better of it; I think I asked her if she did not think it was hard to persuade Philip Couch to sign his property away to her father, as it was his property; she replied that it was hard, but it could not be helped now; I understood from Mrs. Conner, the wife of John Conner, that when Couch's debts were paid, that Couch was to move back to the mansion house, and have the place as he always had it, previous to his signing that paper; I mean the right to his place; Mrs. Couch never told me that John Conner had paid any money to Philip Couch on the place, or to any one, except to pay Philip Couch's debts, and further deponent saith not."

*Robert Jewell* testified to nearly the same facts.

Defendants further proved, by William Tidball, that defendant Sutton had made valuable improvements on the land, to which plaintiff objected, on the ground that Mrs. Couch was a *feme covert* at the time the alleged improvements were made, and that the same were made by him, with notice of plaintiff's title; which objection was overruled by the court, the evidence admitted, and bills of exceptions sealed. Also, a lease for life, dated September 25, 1827, from Philip Couch and wife, to Alexander Bowers, in consideration of the said Bowers supporting lessors during their natural lives. Also, assignment of said lease, dated December 1, 1838, by Bowers to Samuel Kingston, Esq.

Also, judgment *Samuel Kingston and Robert Burke* v. *Philip Couch*, entered in Court of Common Pleas of this county, November 1, 1833.: *Fi. fa.*, No. 156, March Term, 1834; levy on land in dispute, waiver of inquisition, and agreement of condemnation. *Vend. expo.*, No. 139, June Term, 1834, returned. Sold the property to Burke, M'Candless & Kingston, May 28, 1834. Sheriff's deed to same parties, dated May 28, 1834, and acknowledged in open court same day.

In 1840, Burke and M'Candless' title became vested in Kingston, who conveyed to Sutton, the plaintiff in error.

[Couch *v.* Sutton et al.]

Defendants further offered the bill *in perpetuam rei memoriam*, record, decree and depositions, filed in No. 273, April Term, 1843. *Samuel Kingston* v. *Catharine Couch, Jesse Conner, James Conner, Samuel Conner and John Conner, Jr., children and heirs-at-law of John Conner, deceased.* Plaintiff objected:

1. Because this was not a proper case for such proceedings.

2. That the District Court has no jurisdiction.

3. Because the subpœna was irregular and illegal, being served on Mrs. Couch and not her husband, and because her husband was not a party to the bill.

The court, HAMPTON, J., charged the jury, (*inter alia*,) "That cases of this kind are usually tried in courts of equity, where such courts exist as separate and independent tribunals from courts of law; but in this State the court and jury stand in place of a Chancellor. In equity the character of the conveyance is determined by the clear and certain intention of the parties; and any agreement in the deed or in a separate instrument, showing that the parties intended that the conveyance should operate as a security for the repayment of money, will make it such, and give the mortgagor the right of redemption. So that a deed absolute on its face, and recorded as a deed, will be valid and effectual as a mortgage, and so considered as between the parties; if it was intended by them to be merely a security for a debt, and this would be the case though the defeasance was by an agreement resting in parol; for parol evidence is admissible to show the actual transaction between the parties. For this purpose, the acts and declarations of the parties are an important consideration, and these are generally to be established by parol evidence. 5 Binn. 503; 6 Watts, 134; 4 Kent, 142; 3 W. & S. 388.

"And the fact that a deed absolute on its face was intended as a mortgage, may be shown by testimony of the admissions of the grantee to that effect, made subsequently to the conveyance with corroborating circumstances. 1 Hoff. C. R. 31. And especially so if the grantee continues in possession. 13 Vermont, 341."

The admissions of evidence under objection, and the charge of the court, were assigned for error.

*Darragh* and *Mellon*, for plaintiff in error.

1. The depositions of Robert Jewell and wife are not admissible between these parties, to alter and change the deed of the 8th of August, 1812, into another instrument of an entirely different nature and character, by loose *dicta* of parties and "understandings" of witnesses, not occurring at the time of its execution. Robert Jewell, in his deposition, says he leased the property in February, 1812. The deed is dated 8th of August, 1812, six months after the lease. Jewell says, " Couch told me

*when he rented* the farm that he was in debt, and wished to rent the farm to pay his debts." He fixes no time to the alleged conversation with John Conner and wife, nor does he attempt to give the language used by either of them. If we are to be visited by the loose declarations of our grantor and *his wife*, the defendants in error should at least give us their own language and the time when it occurred.

Defendants in error claim that the deed of 1812 was a mortgage; by the testimony of Robert Jewell's understanding, and by that of Mrs. Jewell, that it was obtained by fraud. The rule is that parol evidence of fraud or mistake must be clear and *consistent*, (8 W. & S. 76,) and when received to contradict, alter, modify or change the nature and character of a solemn instrument of writing, must be confined, in the first instance, to the time of the execution and delivery of the deed. When this is done, subsequent parol declarations may be given in corroboration. *Blight* v. *Scheck*, 10 Barr, 289.

There is no evidence in the cause of fraud in John Conner in accepting the deed, or mistake in the scrivener in writing it, at the time of its execution and delivery, to authorize the court to permit these depositions to go to the jury. It would be error to submit a question of fraud or mistake to the jury upon slight and trivial parol evidence. *Stine* v. *Sherk*, 1 W. & Serg. 195; *Irwin* v. *Shoemaker*, 8 W. & S. 76.

As between the parties to a conveyance of land, subsequent parol declarations are inadmissible, to alter and explain the agreement of the parties, except in corroboration of similar statements at the time of the conveyance itself; unless it seems to show the existence of a secret trust, or to prove fraud practised at the inception of the transaction, subsequently confessed. *Rearick's Ex'rs* v. *Rearick*, 3 Harris, 66; *Billinger* v. *Eckert*, 16 S. & R. 424; *Stine* v. *Sherk*, 1 W. & S. 195. Even thus restricted, it is acknowledged to be full of danger. Were the door opened for the loose *dicta* of the parties, running, it might be, as in this instance, through a long course of years, the flood of evil might become so great as to sweep before it every barrier of confidence and safety, which human forethought, springing from experience, is so sedulous to raise against the treachery of memory or the falsehood of man. To avoid, therefore, what would really be a social calamity, it is recognized as a settled maxim, that oral evidence of an agreement or understanding between the parties to a deed, or other written instrument, entertained before its execution, shall not be heard to vary or materially affect it. *Cozens* v. *Stevenson*, 5 S. & R. 421; *Gilpin* v. *Conesqua*, 1 P. C. C. Rep. 85; *M'Kennan* v. *Henderson*, 1 Penna. 417; *Kunkle* v. *Wolfersberger*, 6 Watts, 126.

The admission of the petition, record and depositions, in No.

273, April Term, 1843, *in perpetuam rei memoriam*, was erroneous:

1. Because the Supreme Court *only* has jurisdiction. Const. art. 5, sec. 8.

2. Because Philip Couch, the husband, is not joined.

The bill sets forth that Philip Couch was dead at the date of its presentation, and yet the complainant called and examined him as a witness against his wife. There was no answer filed by defendants, nor was judgment entered in default thereof. The practice in cases of perpetuation of testimony is the same here as in England. 1 Wharton, 178; Orders in Chan. No. 73; Bacon, C. J., Gresley's Eq. Ev. 133; 1 Smith, Ch. Pr. 485; Eq. Drafts. 358; *Angel* v. *Angel*, 1 Sim. & Ster. 89; Act of 31st March, 1792; Act of 24th February, 1834; 4 W. & S. 302; Acts of 1715 and 1823; Brightly's Purd. 233; *Keyl* v. *Burling*, 1 Caines, 14; 3 Binn. 311; 1 Green. Ev. sec. 538; 7 Barr, 85; 4 R. 273; 3 Y. 108.

The court erred in charging the jury "that the fact that a deed, absolute on its face, was intended as a mortgage, may be shown by testimony of the admissions of the grantee to that effect, with corroborating circumstances." The rule as here stated is entirely too wide and latitudinary. We have been unable to find any cases in Pennsylvania that will sustain the opinion of the learned Judge of the District Court as above stated. In *Rearick's Ex'rs* v. *Rearick*, (3 Harris, 73,) Bell, J., after a critical review of the leading cases on the question in this State, states the rule to be this: "That there is but *one* case where subsequent parol declarations can be invoked, and that is to show the existence of a secret trust or a fraud practised in the inception of their transaction, subsequently confessed." There is no secret trust alleged or claimed here, nor was there any fraud at the inception of the transaction, subsequently confessed. The bill to perpetuate testimony, and all the evidence offered by defendants, shows there was no fraud at its inception.

The learned editors of Phil. on Evidence, (2 Cowen & Hill, p. 574,) say, "There are few cases in courts of law, where in respect to deeds of conveyance or other instruments it is allowable to aver or prove what the party intended as contradistinguished from the words the instrument express. It is proper to notice, however, that it has been settled in New York, contrary to the doctrine that prevails elsewhere, that a deed of lands, or a conveyance of personal property, apparently absolute, may at law be shown by parol evidence to have been intended as a mortgage, and treated accordingly. *Walters* v. *Conley's Adm'r*, 14 Wend. 63; *King* v. *Franklin*, 2 Hall, 1; *Champlin* v. *Butler*, 18 Johns. 169; *Webb* v. *Rice*, 6 Hill, 219, where all these cases are overruled. The law in New York is now in conformity with

[*Couch v. Sutton et al.*]

a rule in England, and most of the United States." In *Stanton* v. *Commonwealth*, 2 Dana, 199, when it was offered to be shown by parol evidence that a deed was a mortgage, the court said, "that written instruments would be valueless, if they can thus be modified by parol testimony." In South Carolina, (1 Hill, 371,) the question arose whether a bill of sale of a slave, apparently absolute, could, as between the parties, be shown to be intended as a mortgage. The court held it could not in a court of law, though such evidence might be proper in a court of equity on the ground of *fraud*. In Massachusetts, evidence of this kind has been refused. *Fint* v. *Shelden*, 13 Mass. 443. So in Maine, (*Smith* v. *Tilton*, 1 Fairf. 350,) and in Connecticut, (*Reading* v. *Weston*, 8 Conn. 117,) the rule in equity is stated by the learned editors to be, "That it is clear that parol evidence in equity, for the purpose of changing a conveyance, apparently absolute on its face, into a mortgage, can only be done upon the ground which will authorize an inquiry as to the real intention, independent of the one expressed in the writing. But how far can this inquiry go? It is limited to the ascertainment of what the instrument would have expressed, had it not been for some *mistake* of the scrivener, some *fraud* of the opposite party, or some intervening circumstance, constituting *in itself* a sufficient ground of relief in respect to written instruments generally in that court." 4 Phil. Ev. 577, by Cowen & Hill, 1 Story, Eq. sec. 157.

*Mellon* and *Loomis*, for defendants in error, contended that the evidence of Mr. and Mrs. Jewell was competent, and referred to *Kunkle* v. *Wolfersberger*, 6 W. 126, 130; *Whittock* v. *Kain*, 1 Paige's Rep. 202; *Morris* v. *Nixon*, 1 How. 118; Hoffman's Rep. 31.

The conveyance from Connor and wife to the plaintiff, Mrs. Couch, was never recorded. Sutton, the landlord, had no notice of its existence until it was offered in evidence upon the trial. He did not rest upon that title in any manner, before it was produced, for the very satisfactory reason that he knew not of its existence. He relied on the title claimed under the sheriff's sale, and the claim that the original conveyance was, in effect, a mortgage, and had been paid. These facts, and the additional fact, that he had expended some two or three thousand dollars in the improvement of the property, he surely had a right to show against the claim of a party who had concealed her pretended title for the period of twenty-five years. She knew perfectly well that Sutton was expending his money freely in the improvement of the property; and with that knowledge, covert or discovert, she ought to be barred from all claim, after concealment of her title.

The opinion of the court was delivered May 17, 1855, by

LOWRIE, J.—Both parties here claim title under Philip Couch, the plaintiff's late husband. He conveyed the land to Conner, his father-in-law, in 1812; and he, in 1826, conveyed it to Mrs. Couch, allowing her husband a maintenance for life out of it. This conveyance has never been recorded, and on it the plaintiff's claim is founded. The defendant, Sutton, shows that the conveyance from Couch to Conner was intended as a mortgage, that it was satisfied, and that by sheriff's sale, in 1836, Couch's title was divested, and in 1840, it became vested in Kingston, from whom Sutton purchased. The questions raised here relate to the legitimacy of the principles involved in the defendants' evidence.

1. The main principle decided by the court below is involved in several questions of evidence and expressed in the charge, and is this, that declarations of the grantee of land, though made after the conveyance, are admissible, with corroborating acts and circumstances, such as the grantor's continuance in possession, and the like, to show that an absolute deed was intended as a mortgage. This principle, thus confined to cases of alleged mortgage, is too well settled to require any discussion by us.

2. Another principle involved in an admission of evidence is, that even a married woman, being bound like others by the recording acts, may be estopped from claiming under an unrecorded deed, if she sees one in possession, and making valuable improvements, under a title that is good against any other title that she may have, and he has no notice or knowledge of her title under such a deed. This was correctly decided.

3. Another principle is involved in the proceedings to perpetuate the evidence, against the heirs of Conner, including Mrs. Couch, of the title now claimed by the defendants, and it is this: where a bill is filed against a married woman to perpetuate evidence against a title that she might set up, and her husband is not made a party, because he is supposed and alleged in the bill to be dead, and at the taking of the evidence counsel appears for the defendants, and the husband also is present and examined as a witness, and the decree of perpetuation is made without any objection having been stated on account of the husband not being a party with his wife, it is too late to raise the objection when the controversy has arisen, and the testimony is offered to be read.

This, also, is right, for married women are bound by the judgment of courts in adversary proceedings in which they are entitled to appear, just as other people are; and this saves us from any special notice of the fraud involved in her concealment of her real title, while parties were providing against the possibility that she might set up a claim as an heir of Conner. All the objections to the record relate to irregularities that are cured by

the final decree, unappealed from. The District Court has juris-
diction of a case to perpetuate evidence.

4. Thomas Wadsworth was not interested in the bill to per-
petuate testimony, for he was no party to it, and it could not be
used for or against him ; and we dó not see that he has now any
interest, either by possession of, or title to, any part of the land
in controversy.

5. In the validity of the sheriff's sale of Wadsworth's title, the
plaintiff has no concern, for the verdict establishes that, without
this, her right is gone.

Judgment affirmed.