## McCullough *versus* Wilson.

1. A mortgage by a husband and wife, of the separate estate of the wife secured to her by marriage articles not recorded, is invalid against the wife and her heirs as to the mortgagee *having actual notice of the marriage articles.*

2. But though the mortgage were invalid as to the interest of the wife, and a judgment thereon invalid for want of description of the premises, yet, after *levari facias* and *alias levari facias* issued thereon describing the premises, if the husband and wife procure a person to purchase the mortgage, they and their heirs are estopped from denying the validity of the mortgage and judgment thereon, and are concluded by a sheriff's sale of the premises under such proceedings.

3. In a proceeding against the husband and wife on a mortgage by both of the wife's land, the husband may employ counsel to appear for both and confess judgment.

ERROR to the Common Pleas of *Cumberland county.*

This was an action of ejectment to November Term, 1848, by Thomas S. Wilson, Ann D. Wilson, and others, *v.* David W. McCullough and others, for 2050 acres of land, called The Cumberland Furnace Estate.

The case was up before, and a report of it exists in 7 *Harris* 77, &c.

The plaintiffs, except one, claimed as children and heirs of Eliza Wilson, formerly Eliza Ege. By marriage articles between James Wilson, her intended husband, and the guardians of Eliza Ege, then a minor, dated 21st July, 1817, Wilson covenanted to settle upon her, after her becoming of legal age, the one-half of her personal and real estate, for her use during life, with remainder to her offspring. She was married and came of full age in December, 1817. Whether she was of lawful age *at the time of her marriage,* it was stated did not appear.

On the 12th December, 1821, Wilson and wife, to secure a debt of the husband, mortgaged the whole estate to *the Harrisburg Bank.* The mortgage was recorded on 21st December, 1821. The marriage articles were not then on record; they were not recorded till 22d July, 1823. The lands in controversy were described in the mortgage.

[McCullough v. Wilson.]

In 1828 a precipe was filed for a *scire facias* against Wilson and wife, on the mortgage. The *scire facias* did not actually issue, but an entry on the record, as follows, was made :—

I appear to this case for defendant, without service of writ with the same effect as if a writ had been issued and served; but no other. Signed by "J. B. Parker, for defendant."

A plea was entered for Eliza Wilson that the lands mortgaged were her estate, and that at the time of the execution of the mortgage she was married. The plaintiff demurred generally, and a joinder in demurrer was had. The plea of payment was also put in. The Court rendered a judgment on the demurrer *for* Eliza Wilson; upon which the plea of payment was withdrawn, and verdict was rendered against *James Wilson*, the husband, for $8649.31. A writ of error was sued out, and it was assigned for error, 1. The Court erred in receiving the plea of Eliza Wilson; 2. In giving judgment for the defendant instead of plaintiff. On 13th October, 1832, the judgment was *reversed* and judgment entered for the plaintiff. See the judgment referred to in the case of Jamison *v.* Jamison, 3 *Wharton* 457.

After this, viz. to January T. 1833, No. 292, an *amicable scire facias* issued to revive the judgment in favor of Harrisburg Bank *v.* James Wilson and Eliza his wife. The docket entry was to this effect—"Defendants by their agreement in writing, dated 30th March, 1833, appear and revive judgment for $10,302.76. It was stated that it was proved that the original paper was lost.

Upon this judgment of revival a *levari facias* issued to April Term, 1833, in which the mortgaged premises were particularly *described*. The writ was returned sold, but conditions of sale not complied with. An alias writ of *lev. facias* was issued, in which the premises were also described, and the property advertised to be sold, when the following agreement with Jacob Albert was made:

We agree that if an arrangement be made by Mr. Jacob Albert with the Harrisburg Bank, so that the said Albert procures a transfer of the judgment of the Bank against James Wilson and wife, and has the sale of the property of said Wilson and wife postponed until Thursday next, to permit the sheriff to go on and sell the said property on said judgment on Thursday next, in case the agreement between Jacob Albert and James Wilson and wife be not carried into effect before that day. It was dated 13th July, 1833, and signed                                    JAMES WILSON.
                                                                        ELIZA WILSON.

Five days afterwards, viz. on the 18th July, 1833, an agreement was entered into, signed by James Wilson, Eliza Wilson, and Jacob Albert, in which it was stated that the sale of the mortgaged premises was postponed in consequence of Albert, with their know-

ledge and consent, having advanced the sum of $9,673.89, the balance of the judgment to the Harrisburg Bank, with interest, &c.; that the bank has assigned to him the judgment, and it was agreed, in consideration of such payment and agreement, to stay the sale of the property, that in case of default being made in making certain specified payments by Wilson, Albert might be at liberty to sell the said mortgaged premises, they waiving all objections to the estate being sold on the ground "of any arrangement," before made by the Harrisburg Bank or its attorney with the said Wilson and wife or any person in their behalf "respecting said judgment." Dated 18th July, 1833, and signed by James and Eliza Wilson, and Jacob Albert.

On the same day, viz. 18th July, 1833, the judgment on the mortgage was assigned to Albert, and the *levari facias* was returned, the premises not being sold.

There was no further proceeding on the judgment until 1835, when to April Term, 1835, a *pluries* writ of *levari facias* was issued, in which the premises *were described*; and on the 11th July, 1835, the sheriff returned, "Sold to Frederick Watts, Esq., on the 22d April, 1835, for $13,700, and paid the same over to attorney Lyon."

5th April, 1835, sheriff's deed. 9th April, 1835, deed by F. Watts and wife to Miller and Cooper. 10th October, 1837, deed Cooper and wife to Miller. 19th December, 1848, deed Miller and wife to Green and McCullough.

The recorder of deeds testified that there was in the recorder's office, no other mortgage of James Wilson and wife on the lands in dispute, or on any other lands at the time of the judgment on the mortgage in evidence, or before or after the date of that judgment till the time when Albert became the purchaser of the said mortgage; and no other mortgage by Wilson and wife to the Harrisburg Bank. This was to show that the *sci. fa.* to January Term, 1828, No. 40, was issued upon the mortgage in question.

The plaintiffs offered to show that upon the faith of the record, judgments, and proceedings thereon, the lands in dispute had passed by conveyances to 48 purchasers who were then in possession, though not parties to the suit. This was rejected.

On part of the plaintiffs, John Foster, Esq., former cashier of the Harrisburg Bank, was examined to show that the marriage articles were known to the bank at the time of the taking of the mortgage of Wilson and wife; and he stated that the existence of the articles was known *to all the directors*. Nothing of it, however, existed on the minutes of the bank.

A number of points were proposed on the part of the defendants. GRAHAM, J., observed to the jury, that the plaintiffs allege that

[McCullough v. Wilson.]

there was nothing connecting the judgment in the Common Pleas with the mortgage in the recorder's office, and consequently that the title of Mrs. Wilson was not divested by the sheriff's sale. That if the former decision of this case was understood by him, the *lev. facias* on the mortgage was not only irregular, but void, and therefore the sale did not divest the title of Mrs. Wilson; and he instructed the jury that the verdict should be for the plaintiffs. This instruction was the principal matter assigned for error.

*Biddle* and *Watts*, with whom was *Miller*, for plaintiffs in error. —It was contended that the marriage articles were invalid for want of proper parties. Eliza Ege was no party to them; 1 *Southard* 84; 2 *U. S. Dig.* 503; and her guardians exceeded their authority: *McPherson on Infants* 278; *Id.* 202; *Id.* 447–8; *Lewin on Trusts* 92, &c. That if not binding on *her* part, they were not binding on *James Wilson*.

It was said on the part of the plaintiffs, that there was *notice* to the Harrisburg Bank of the marriage articles; but if the bank had notice, there was none to subsequent purchasers: 9 *Barr* 399; 1 *Washington* 4; 2 *Bin.* 40; 8 *Ser. & R.* 496; 2 *Rawle* 215; also *the Recording Act of* 1755, sec. 1.

It has been decided by this Court, that the mortgage executed by Wilson and wife *is valid*: also cited 4 *Pa. Law J.* 373: 8 *W. & Ser.* 413.

Having pledged her land by mortgage, she became a party who must be sued in case of proceedings upon it: 2 *Roper on Hus. and Wife* 265. The *scire facias* was waived. By the plea put in the want of a *sci. fa.* was supplied, and by it the record could be amended. The Supreme Court entered judgment on the demurrer for the plaintiff. Such a judgment should not be reversed *collaterally*: 4 *Rawle* 401; 6 *Watts* 410; 10 *Id.* 101. There was but one mortgage on record between Wilson and wife and the Harrisburg Bank. The lands were described in the *levari* and *alias lev. facias*: 2 *Jones* 217; 10 *Barr* 495–6; 4 *Watts* 424; 1 *Rawle* 225.

The purchaser is protected by the 9th sect. of the Act of 1705, in case of the reversal of the judgment: also 4 *Watts* 286, Tainter *v.* Warder; 6 *Watts* 295.

As to acquiescence of Wilson and wife. 1 *Rawle* 162; 1 *Com. Rep.* 470; 14 *Mass.* 405; 9 *Barr* 144; 2 *Id.* 165; 13 *Ser. & R.* 306.

Wilson and wife were estopped by the agreement between them and Albert: 1 *Story's Eq.* 385; 6 *Barr* 425; 5 *Harris* 275.

*Bonham* and *Williamson*, with whom were *Hepburn* and *Moore*, for defendants in error.—The heirs claim one-half of the premises in dispute under the marriage settlement, and the whole at law.

[McCullough *v.* Wilson.]

It was said that the whole case was decided by this Court on the former hearing. Wilson covenanted in consideration of marriage, that the guardian of his intended wife should have a conveyance; and in violation of it he procured his wife to join him in a mortgage of land included in the settlement. It was contended that such a mortgage to one *having notice* of the settlement did not affect the equity of the wife: 2 *Roper* 27; *Atherly* 49; *McQueen* 252; 1 *Bro. C. C.* 117; 18 *Ves.* 275; 2 *Leigh* 76.

Eliza Ege was a witness to the marriage articles. Signing as a witness *with a knowledge of the contents* of the instrument is sufficient to bind a party: 1 *Wilson* 118–19; 3 *Atkins* 503; 1 *Ves. Sen.* 8; 9 *Ves. Jr.* 234.

It was said that the marriage settlement was a valid settlement, and bound one-half of the real estate. That it was effectual against the Harrisburg Bank, which it was said had *actual notice* of the articles. The articles were recorded on 22d July, 1823. The assignment to Jacob Albert is dated 18th July, 1833, nearly ten years afterwards. It was said that a recording under the Registry Act was notice to all who take an interest in the property *after the date of the recording*.

It was said that the judgment against Mrs. Wilson was void for want of jurisdiction. That the land was not *described* in the record of the suit. The authority of the Court to act upon the particular subject should appear *by the record*; any writ of execution issued must be authorized by the record, and in proceedings *in rem* the judgment of the Court is required to be concerning the specific land.

Mrs. Wilson as a *feme covert* could not waive the *scire facias*. She could waive nothing except in the way provided by law: 7 *Watts* 228. It was contended that she could not appoint an attorney except to dispose of her lands, and it must be *duly acknowledged*: 3 *Taunton* 361. But the writing did not refer to any particular land. As to the *plea*, it was submitted whether there was anything in it which showed what lands were the subject-matter of the suit.

It was further said, that *the record* not showing what land was the subject of the proceeding, the judgment of the Supreme Court did not cure the defect. The judgment was for *no sum*: 16 *Ser. & R.* 348. The revival of it made it no better, as Mrs. Wilson *was a feme covert*: 3 *Wharton* 313; Dorrance *v.* Scott, 2 *Campb.* 272; 2 *P. Wms.* 144; 6 *Harris* 79, Caldwell *v.* Walters.

As to *the writs*. The prothonotary had no proper data for describing the premises in the writ of *levari facias*. No application was made *to amend the record*. There was no judgment of the Court to warrant an execution describing the premises.

A *void* judgment will not warrant an execution, and a sale under

[McCullough v. Wilson.]

it confers no title; Caldwell v. Walters, before cited. Such deficiency as existed in this record could not be supplied by parol proof: 10 *Watts* 23.

The agreements with Albert were invalid as to Mrs. Wilson by reason of her coverture: 6 *Wend.* 13; 16 *Johns.* 114; 17 *Id.* 167; 6 *Barr* 414; 2 *Jones* 274; 12 *Ser. & R.* 403.

The opinion of the Court, filed September 6, was delivered by

Lowrie, J.—This cause was before us last year, when all the points then raised were decided. We have now heard the same points again discussed, and, in relation to them, it is sufficient to say that we perceive no error in the conclusions to which we were led by the former argument. To our minds it is clear that the mortgage in question and the proceedings under it, have not at all affected the title to the half of this land that was included in the marriage settlement, and this the plaintiffs below have properly recovered. They insist moreover that, because the judgment was void under which the other half was sold, therefore they are entitled to that also. The judgment is certainly void for the reasons assigned here on the former argument.

Now, however, the defendants below allege and show that this property was the very property mortgaged by Wilson and his wife, and was in fact the subject-matter of the suit and judgment; that it was fully described in the writs of *lev. fa.* issued upon the judgment; and that, after those writs were issued, the defendants in that suit, the ancestors of the present plaintiffs below, in order to obtain indulgence, procured Jacob Albert to buy the judgment and stay the proceedings; and they insist that, by reason of those facts, Wilson and his wife are both estopped from denying that the judgment sustained the *lev. fa.*, and was good against the land described in it. This is the question of the cause, and we proceed to consider it.

We have lately decided, in Evans v. Mylert, that where a suit is brought against husband and wife on a mortgage of the wife's land, the husband may employ counsel to appear and confess judgment for both. In this case there was an appearance and judgment thus obtained; and Mrs. Wilson was thus made a party to the proceeding for all its legitimate purposes, up to its final termination. She could have been made a party to a correction of the error in the record, and she would have been had it been discovered. As matter of fact, her rights under this mortgage were litigated and decided; but by reason of an omission, this does not appear as matter of record. As matter of record, therefore, there was no judgment, while as matter of fact one had been confessed, and could have been made perfect on the record by an amendment or correction. Have the defendants in that proceeding so acted that

[McCullough *v.* Wilson.]

equity requires us to consider that as done which ought to have been done? They did so when they procured a friend to buy the judgment for their benefit, as a good one: and we do no more than enforce the agreement of the parties, and prevent them from repudiating a transaction from which they have derived the stipulated advantage, when we refuse, under such circumstances, to hear their objection to the validity of the judgment. We must presume that if this question had been raised when a *lev. fa.* was issued by Albert, the Court would have found means to correct their judgment so as to be a good foundation for the writ. Where a judgment is not incurably defective, a plaintiff may preclude himself from taking advantage of its defects, by getting another to buy it for his benefit.

May a married woman thus bind herself by acting with her husband? Why not? The fact that she can be sued with her husband, entitles her, with him, to do all proper acts relative to the defence of her rights that are involved in the suit. It was proper for her interests that she and her husband should make an arrangement for time, in order to prevent a sacrifice of her property. Both are therefore bound to all the consequences of the arrangement. True, she did not bind herself by a separate acknowledgment, but that form of proceeding does not apply to such an act. True, also, a door is here open through which the wife may be imposed upon by her husband; but we find it open and would not shut it, for it is opened by the very confidence that ought to exist between husband and wife; and confidence will hold it open so long as pure affection is allowed to be a legitimate element of the marriage relation. In this relation we find the highest, and noblest, and purest, and therefore the most civilizing illustration of the confidence of human beings in each other; and such can never be reposed without the risk of imposition. Let it remain, for the good it does, and notwithstanding its dangers. When the law invades the sacred confidence of the marriage relation in order to save the wife from the faults or misfortunes of the husband, it, in some measure, loosens the bond whose principal virtue consists in its closeness.

We are of opinion that the defendants below made good their defence to one-half of this land. The other exceptions of the plaintiffs in error are not sustained.

Judgment reversed and new trial awarded.