## Brown's Appeal.

A married woman loaned money to her husband out of her personal estate, and as security therefor took a judgment in the name of a trustee. To enable her husband to obtain a new loan she certified in writing, with the assent of her husband, that the judgment to secure this new loan should take precedence of her judgment. This certificate was entered on the record and attested by her husband, and the loan was then made and the judgment given. The husband's real estate was sold at sheriff's sale, and in distributing the proceeds, *Held*, that this certificate was an executed contract, and operated as an immediate and unconditional release of her prior right of lien to the amount of the new judgment, and she could not repudiate it on the ground that she was a feme covert.

May 7th 1880. Before MERCUR, GORDON, PAXSON, TRUNKEY and STERRETT, JJ. SHARSWOOD, C. J., and GREEN, J., absent.

Appeal from the Court of Common Pleas of *Lancaster county:* Of May Term 1880, No. 1.

Appeal of Emeline H. Brown from the decree of the court distributing the proceeds of the sheriff's sale of Kirk Brown's real estate.

The following facts were found by the auditor, George M. Kline, Esq., appointed to distribute the fund.

Kirk Brown being the owner of real estate in Lancaster county, borrowed money, for which as securities for the loans, he gave his judgment bonds, which were duly entered in the Common Pleas of said county. When his real estate was sold, the following judgments appeared against him in the order below stated: 1. Sanders McSparran, entered April 1st 1873; $3000 paid out of pro-

ceeds of sale. 2. Timothy Haines, for use of Emeline H. Brown, dated April 1st 1873, entered June 23d 1873, for $5000. 3. Mary T. E. Hiester, now Levis, dated April 2d 1877, entered on same day for $3000.

The following endorsement was on Mrs. Brown's judgment:—

" April 2d 1877. This is to certify that I give my consent for the judgment bond of Mary T. E. Hiester, amounting to three thousand dollars, to have preference over mine.

EMELINE H. BROWN."

"Witness present: KIRK BROWN."

Emeline H. Brown was at the time, and still is, the wife of Kirk Brown. The loan by Mrs. Hiester was made through her attorney. It was admitted, "that Mrs. Hiester refused to give the money at the time Kirk Brown asked the loan of $3000, unless Mrs. Brown would agree to postpone the lien of her judgment in favor of the one to be given to her, and that Kirk Brown accordingly produced the consent of his wife written on the back of the bond," and attested by him.

Kirk Brown testified that "his wife did not get a dollar of this money;" but from his testimony it appeared that she signed the consent on the back of the judgment, that she knew her husband was going to get $3000 from Mrs. Hiester, for which he was to give his judgment; that he asked her to sign the consent on the back of the bond, which she did, that this consent was presented to Mrs. Hiester's attorney, and then he got the money, for which this judgment No. 3 was given.

The auditor reported:—

." Two facts distinctly appear : 1. The consent was voluntarily given, and executed and attested by the husband. 2. Without this consent of preference of lien, Mrs. Hiester would not have loaned this money to Kirk Brown.

" Outside of this paper of April 2d 1877, the order of distribution would unquestionably be : 1st. To the judgment of Mrs. Brown. 2d. To the judgment of Mrs. Hiester. Under the agreement or certificate of April 2d 1877, Mrs. Hiester claims that her judgment, although later in time of entry, has preference in payment. This is resisted by Mrs. Brown, who insists that the lien of her judgment is not to be postponed by any act of hers, because : 1. She was and is a married woman. 2. The contract is executory and cannot be specifically enforced against her. 3. She received no consideration for her act.

" These antagonistic positions raise the contention in this case, and present the question, can a married woman holding a judgment against her husband's real estate surrender with his consent her preference of lien in favor of a junior judgment-creditor, when the loan of this junior judgment-creditor was made upon the faith

of her act of surrender, and without it would not have oeen made. This is a case of the separate estate of a married woman, and is governed by the rules of law regulating the disposition and control of such interests, and differs materially from those equitable estates or interests which are created for her sole and separate use, and over which she has no control, except so far as it is given by the instrument creating them.

"The Act of 11th April 1848, is restraining and protective. While it gives a married woman no powers (except in the specified cases of a will, &c.), that she did not possess.before it does not deprive her of any that she had previously enjoyed. It protects the wife's estate from the encroachments of the husband or his creditors. The husband now has no power to transfer or encumber it, save in the manner allowed by the act. But her power of disposition, either for her own use or for his benefit, continues as it existed prior to this enactment: Haffey *v..* Carey, 23 P. F. Smith 431; Bond *v.* Bunting, 28 Id. 215–16; Brunner's Appeal, 11 Wright 73; Moore *v.* Cornell, 18 P. F. Smith 320; Fryer *v.* Rishell, 3 Norris 521; Hinney *v.* Phillips, 14 Wright 382; Church *v.* Jaques, 17 John. 449.

"If it be to dispose of her real estate by conveyance, or make a special pledge of it by mortgage, the husband must join in the act, and all the forms requisite of the Act of 1770 be carefully observed. If it be to dispose of her personal estate, that requires no separate acknowledgment. She may give her money or other personal effects to her husband or to a stranger, with his knowledge and consent; she may assign her choses in action, her husband joining in the act or assenting to it; and having the power to do so, the instrument employed will be construed so as to carry out the intention of the parties.

"She may let her husband have the effect of the benefit of her separate estate, 'and whether she has made a prudent or imprudent, a good or bad disposition of the estate, is not to be made a test, whereby the validity of such disposition, whatever it may be, is to be determined:' Towers *v.* Hagner, 3 Whart. 48; Hoover *v.* The Samaritan Society, 4 Id. 445.

In this case Mrs. Brown made no contract, creating a personal liability or a charge upon her estate. All that she did was to execute and deliver an instrument intended to control an incident to her judgment in relief of her husband, and with his assent. Suppose she had assigned this judgment in toto to her husband, or to a stranger with his consent, is there any principle of law or equity, outside of fraud or duress, or mental incapacity, by which she could be relieved from her voluntary act? Or suppose, for the purpose of raising money to promote the advantage or benefit of her husband, she had assigned three thousand dollars of her judgment to Mrs. Hiester, and then loaned the money received to her

husband, who lost it by the misfortune of trade, or squandered it by profligacy, could she repudiate her assignment and demand the whole sum represented by her judgment for her own use ? This would be a fraud so gross as to offend every sense of right.   Or suppose Mrs. Brown, with her husband, had released this judgment for the purpose of giving Mrs. Hiester the first lien, and after that a new judgment for the old debt was entered in Mrs. Brown's favor, upon a distribution following a judicial sale, could there be any pretence of claim made to transpose these judgments and give to Mrs. Brown the first lien ?

"If this married woman, with her husband's consent, could have assigned or released, in whole or in part, this judgment, thereby extinguishing to either extent her estate represented by this security, why cannot she, under like circumstances, do a lesser act, which does not destroy the debt, but only affects the lien thereof to a limited extent ?   The husband was the actor through whom the wife acted.   Can she bind herself by acting with her husband in an arrangement of this character ?   The language of the court in McCullough v. Wilson, 9 Harris 436, is so tersely applicable to this case that it is here quoted : ' True, she did not bind herself by a separate acknowledgment, but that form of proceeding does not apply to such an act.   True, also, a door is here open through which the wife may be imposed upon by her husband ; but we find it open and would not shut it, for it is opened by the very confidence that ought to exist between husband and wife.' * * *   With these views the auditor appropriates the fund : 1st. To the payment of the judgment of Mrs. Hiester, now Levis.   2d. The balance on the judgment held for the use of Mrs. Brown."

Mrs. Brown excepted.   The court, Patterson, A. L. J., overruled the exceptions and confirmed this report, whence this appeal.

*J. Hay Brown* and *H. M. North,* for appellant.—The single exception in this state to the rule that the bond of a married woman, no matter how meritorious may be its consideration, is utterly void, is her judgment-bond given to the vendor of real estate to secure the payment of purchase-money ; and as a personal obligation it is invalid : Brunner's Appeal, 11 Wright 67 ; Fryer v. Rishell, 3 Norris 521.   In these cases it would have offended every sense of right for her to repudiate her invalid obligation.   She is not bound even where she has received full consideration, and in this case, Mrs. Brown having received no consideration, the moral sense cannot be greatly offended by her determination to stand on her legal rights and claim her own. We know of no case in which a married woman has been held to a specific performance without some consideration to her.   This doctrine of the offence to the moral sense is thoroughly exploded in Schlosser's Appeal, 8 P. F. Smith 493.

The auditor holds that Mrs. Brown might have released or assigned her judgment, or given the priority in favor of 'Mrs. Hiester in some other way, and because it was possible by the exercise of professional skill to secure from her a valid postponement of her lien, that, therefore, she has lost her priority; in other words, that with a married woman *form* is not necessary. In Schlosser's Appeal, *supra*, it was because the form of the married woman's obligation was irregular that she was enabled to escape the payment of the debt.

*W. W. Brown* and *B. F. Eshleman*, for appellee.—The loan of the money by Mrs. Hiester to Kirk Brown, and the judgment given by him to her as security for the loan, was the contract and agreement alone of Kirk Brown and Mrs. Hiester: Mrs. Emeline H. Brown had nothing to do with it. We contend that she had the undoubted right and power to make him a gift of the whole of the judgment-bond and the money thereby secured to her, and release and enter satisfaction for the same on the records of the court. And if she had this right, it follows as a logical conclusion that she had the right and power to make a gift to him of a lesser interest than the whole judgment owing to her by her husband. Thus having the right to do so, she made to her husband a gift of the incident of lien upon her real estate, which the law attached to her judgment to the extent of $3000, to enable him to borrow that sum of money from Mrs. Hiester. She did not release any portion of the debt owing to her by her husband. This was not an executory gift, but was executed by the delivery of the bond (upon which the endorsement of assent was written), by Mrs. Brown to her husband, Kirk Brown, and the placing of the same upon record. As an executed gift from wife to husband it required no consideration: Bond *v.* Bunting, 28 P. F. Smith 210. Mrs. Brown created no liability. She only acted in conjunction and with the assent of her husband in limiting the lien of her judgment against her husband's real estate to the extent of $3000, so as to give Mrs. Hiester a lien prior to the lien of her own judgment against the same real estate. Her act in causing her endorsement on her bond to be placed on record operated by way of estoppel.

The judgment of the Supreme Court was entered May 17th 1880,

PER CURIAM.—Prior to the Act of 11th April 1848, a married woman could dispose of her personal estate to her husband by gift or otherwise, and with his consent to a stranger. That act took from her no rights in regard thereto which she had previously possessed. Its main purpose was to protect her property, both real and personal, from levy and execution for the debts of her husband.

It prescribed a mode by which she might convey her real estate, but did not restrain her freedom in disposing of her personal property. While she may not be liable on a contract to sell and deliver her personal property at some future time, yet she cannot repudiate a gift nor a contract fairly made under which she has delivered the possession of the property : Haffey *v.* Carey, 23 P. F. Smith 431 : Bond *v.* Bunting, 28 Id. 215 ; Fryer *v.* Rishell, 3 Norris 521 : Dando's Appeal, *ante,* page 76.

The auditor has found that her consent was voluntarily given, and executed and attested by her husband, and without this the appellee would not have loaned the money to her husband. It was not an executory contract. It was executed and delivered with the bond. Nothing remained to be done by the appellant. It operated as an immediate and unconditional release of her prior right of lien to the extent of $3000 in favor of the appellee, and induced the latter to part with that sum. Having thus executed and delivered the release upon sufficient consideration, she cannot revoke it to the prejudice of the appellee.

> Decree affirmed, and appeal dismissed at the costs of the appellant.