## APPEAL OF MARIA L. BIGHAM.

[ROBT. ROBB v. T. J. AND M. L. BIGHAM.]

FROM THE DECREE OF THE DISTRICT COURT OF ALLEGHENY COUNTY.

Argued October 26, 1888—Decided January 7, 1889.

(a) In 1846, a single woman just before her marriage made a deed of trust of all her property, real and personal, to a trustee to hold for her sole and separate use, without power in her to alien or incumber, but with power to appoint by will.

Statement of Facts.

(*b*) The trustee accepted the trust and performed its duties until in 1849, when upon his petition and a concurring answer signed by the cestui que trust and her husband, the court decreed a reconveyance to the cestui que trust of the entire property and estate, which was made.

(*c*) In 1887, the husband having lately died, as also the trustee, the widow and former cestui que trust, caused substitution of their representatives to be made and then appealed from the decree made in 1849.

1. In such case, the appellant, having enjoyed the advantage of the decree, made upon her own request and for so long a period of time, was estopped from asserting its invalidity.

2. The cestui que trust, notwithstanding her coverture was competent to appear in court jointly with her husband, and ask for the decree revesting her estate in her absolutely.

3. Moreover, no judgment this court could render would re-establish the deed of trust and re-clothe the appellant with the fettered estate she held under its operation.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK, WILLIAMS and HAND, JJ.

No. 25 October Term 1888, Sup. Ct.; court below, No. 663 April Term 1849, Dist. Ct.

On April 28, 1849, Robert Robb presented his petition, entitled a bill in chancery, which was as follows:

Your petitioner respectfully represents that in contemplation of a marriage about to be solemnized by and between Maria L. Lewis and T. J. Bigham, Esq., all the estate, real, personal and mixed, then belonging to the said Maria, were conveyed to your petitioner, his heirs and assigns, by deed bearing date the 26th day of December, A. D. 1846, and duly entered of record in the recorder's office of Allegheny county, in Deed Book, 4th B, vol. 75, page 436, executed by said Maria L. Lewis, now Maria L. Bigham, and wife of Thomas J. Bigham, Esq., by Thomas J. Bigham and by your petitioner, which said deed of conveyance was made in trust, as follows, viz.:

[The trusts here set out in the petition were in effect: To invest the personal property in such way as to the trustee might seem best, to change the investment from time to time, to receive the interest and income, and to pay the same to the said Maria, from time to time, for her sole and separate use, free from any control of her said intended husband; and, in case said Maria should die in the lifetime of her intended husband, to assign and transfer the property to such person or

persons and in such manner as she, the said Maria, notwithstanding her coverture, by any instrument in writing in the nature of a last will should limit and appoint, and in default thereof, to such person or persons as might be entitled to the same under the then existing intestate laws. Further; to sell and convey the coal under said real estate when and on such terms as the trustee should think proper, and to hold the proceeds on the same trusts as set forth as to the personal estate. Further; to sell the real estate surface or any part or parts thereof whenever the trustee should think proper, and to hold the proceeds on the trusts referred to, provided that no real estate surface should be sold without the consent of said Maria first had in writing; and, until such sale was made, to make such improvements thereon in the erection of buildings, fences etc., as the trustee should deem suitable and necessary; and to receive the rents, issues, and profits of said real estate, or such parts thereof as were unsold, and to pay the same to her, the said Maria, during her life, to and for her sole and separate use, free from any control of her said intended husband; and, in case the said Maria should die in the lifetime of her said intended husband, to convey such parts of the real estate as then remained unsold, to such persons and for such estate or estates, and subject to such charges, as the said Maria, notwithstanding her coverture, by any instrument of writing in the nature of a last will might direct, limit and appoint: and it was provided that the separate receipt of the said Maria, notwithstanding her coverture, should be an effectual discharge to the trustee for all moneys paid her, or paid, laid out and expended or invested in any manner under the several provisions of the trusts stated.]

Your petitioner further represents, that by virtue and in pursuance of said deed of trust your petitioner received the rents, issues and profits of the estate of the said Maria, with the exception of such portions of it as were received by her directly, from the date of said deed of trust to the 12th day of January, 1849, at which time all accounts arising out of such fiduciary relations were amicably and satisfactorily adjusted by and between your petitioner and the said Maria, and the amount then due her on such accounting was paid over to her; since which time your petitioner has not received any

moneys out of the estate of said Maria, she herself having received all the rents, issues and profits of her estate since that date. Your petitioner, believing that all the benefits intended to be secured to the said Maria by the deed of trust aforesaid, are fully secured to her by the act of assembly, passed April 11, A. D. 1848, providing among other things to secure the rights of married women, and that there is no need of the intervention of a trustee for that purpose, and being also desirous of being discharged from his said trust, he prays your honors to make an order directing him to reconvey all the property and estate, vested in him by the said deed of trust, to the said Maria L. Bigham, her heirs and assigns, and also discharging him from his said trust, and make such further order and decree in the premises as the case may require, and to your honors shall seem meet, and your petitioner will ever pray.—

The foregoing petition was accompanied by the following answer signed by T. J. Bigham and M. L. Bigham:

The said T. J. Bigham and Maria L., his wife, formerly Maria L. Lewis, defendants in this bill, severally waive the issuing and service of a subpœna in this case, and severally and respectively these defendants, each answering for himself and herself, and not one for the other, say: That it is true that such a deed as in the said bill is stated to bear date the 26th day of December, A. D. 1846, was duly made and executed by and between such parties, and to such purport or effect as is therein set forth; and the said defendants further answering say, they admit it to be true, that the said intended marriage between them, the said defendants, was soon after the execution of the said deed had and solemnized, and that the said plaintiff did act as trustee as set forth in his said bill during the period therein specified, and that he has fully and satisfactorily accounted to the said Maria for all moneys received by virtue of or arising out of said trust, and paid over to the said Maria the balance due upon such accounting.

And further answering they say: That all and singular the statements as set forth in the said petitioner's bill are true, and that they do hereby consent that the court may grant the prayer of said petitioner, and discharge him from his said trust, and make such other order and decree in the premises as to your honors shall seem meet.

Thereupon the court, Lowrie, J., made this decree :

" And now, to wit : April 28, 1849, the court having read the foregoing bill and answer, and having duly considered the same, they do hereby order and decree that the said Robert Robb, petitioner in said bill, do make and deliver to the said Maria L. Bigham a deed reconveying to her, her heirs and assigns, all the property and estate which became vested in him by virtue of the deed of trust referred to and in part recited in his said bill, and that thereupon he shall be and is hereby without any further order discharged from his said trust, as prayed for in his said bill."

On November 17, 1887, the death of T. J. Bigham was suggested upon the record, and James M. Christy, his administrator, substituted. Eo die, the death of Robert Robb, the petitioner, was suggested and rule on John Robb, his administrator, to show cause why he should not be substituted on the record ; eo die, Maria L. Bigham appealed to the Supreme Court. The rule referred to was made absolute on December 21, 1887, and subsequently the appellant purchased a writ of certiorari, and in this court the following errors were assigned, in substance :

1. The court erred in directing the trustee to reconvey the trust estate and property.

2. The estate limited by the trust deed was an equitable estate in fee for the sole and separate use of the cestui que trust, and there was no power to her to waive the issuing of a subpœna and to consent to the destruction of the trust.

3. The proceeding, being by petition and not by bill in chancery, according to the practice and proceedings in courts of chancery, was unauthorized by law.

*Mr. R. B. Carnahan* (with him *Mr. T. D. Carnahan*), for the plaintiff in error :

No question can be made in this case that the settlement effected by the deed of trust was perfectly created, both as respects the execution of the instrument by the several parties, and the language and terms of the instrument itself : the irrevocability of such an instrument is too well settled to be now called in question : Withington's App., 32 Pa. 419 ; Tal-

bot v. Calvert, 24 Pa. 327; Whichcote v. Lyle, 28 Pa. 73; Barnett's App., 46 Pa. 392; Caldwell's App., 5 Cent. R. 859. The deed created an express trust, and vested in Maria L. Lewis, in immediate prospect of her marriage with T. L. Bigham, an equitable fee simple in the lands, limited to her sole and separate use.

1. A married woman, with a limitation to her separate use, has only the powers which are expressly given to her by the instrument under which she holds: Lancaster v. Dolan, 1 R. 231; Pullen v. Rianhard, 1 Wh. 514; Wallace v. Coston, 9 W. 137; Thomas v. Folwell, 2 Wh. 11; Dorrance v. Scott, 3 Wh. 309; Rogers v. Smith, 4 Pa. 93. Such was the state of the law when the married woman's act of 1848 was passed, and the question soon arose whether the principle so decided was affected by that act. At length, in Wright v. Brown, 44 Pa. 224, affirming Penn. Co. v. Foster, 35 Pa. 134, and overruling Haines v. Ellis, 24 Pa. 253, it was held: "The rule in Pennsylvania, before and since the act of 1848, in reference to real estate held by a married woman to her sole and separate use, with or without a trustee, is that she cannot convey or mortgage it during the lifetime of her husband, unless that power was expressly given by the instrument under which she acquired title." Such is the law at this time, without exception or qualification: Maurer's App., 86 Pa. 380; Twining's App., 97 Pa. 36.

2. As Mrs. Bigham, under the marriage settlement, could not alien or mortgage her separate estate during her coverture, how could she lawfully consent to a decree in equity, sought and obtained by all the parties to the trust for the express purpose of terminating the trust of the marriage settlement? Of course, she could not, for her disability extended equally to such an act. Repeated adjudications have settled that a judgment cannot be recovered against a married woman under the act of 1848, unless the pleadings make a case within its provisions: Hecker v. Haak, 88 Pa. 242; Swayne v. Lyon, 67 Pa. 436; Caldwell v. Walters, 18 Pa. 79; Quinn's App., 86 Pa. 447; Dorrance v. Scott, 3 Wh. 309. In Glidden v. Strupler, 52 Pa. 400, where a married woman declared she had no defence to a judgment, it was held she was not thereby estopped from asserting its invalidity on the ground of her coverture.

3. A proceeding for such a purpose as that for which this petition was filed, must be instituted by bill, not by petition: Ex parte Hussey, 2 Wh. 330 ; § 13, act of June 16, 1836, P. L. 789. The equity rules adopted by this court in 1844, were in force when this petition was filed, and were substantially the same in their requirements as those of the Supreme Court of the United States. Even the amended rules of 1865 retain the essentials of bills and answers, respecting parties and the issuing of subpœnas. It cannot be pretended that this petition, so called by the petitioner himself both in the introduction and in the prayer, is in accordance with the equity rules then in force.

*Mr. C. S. Fetterman,* for the appellees :

The controversy in the cases cited by the appellant generally arose between the husband or heirs of the cestui qui trust, and the trustee, to compel him to do something with the trust estate for their advantage or interest, which was beyond his authority and power. In the present case there has not been a trustee for more than thirty-eight years ; the estate has been as much under the exclusive and absolute control of the appellant as if no trust had ever been created, and without objection or dissent from any one in all that time.

1. There can be no question of the chancery powers of the court when these proceedings were instituted : act of June 12, 1839, P. L. 261; act of April 29, 1844, P. L. 526. Equity jurisdiction is used in contradistinction to jurisdiction in general. Jurisdiction of the subject matter is power to adjudge concerning the general questions involved, and is not dependent upon the state of facts which may appear in a particular case: Hunt v. Hunt, 72 N. Y. 217 (28 Amer. R. 129) ; Pomeroy Eq. J. § 129. The bill filed, though not in strict conformity with the practice at the time, contains all the essentials of a bill in equity, with the names of the parties plaintiff and defendant. The answer of the defendants treated it as a proper bill, and so also does the decree made, and now complained of, but which for thirty-eight years stood without exception or objection.

2. As a question of practice, we submit that a married woman may waive the service of process in legal proceedings

upon her, to save delay and expense ; and, by voluntarily appearing and taking part in the proceedings, she becomes subject to the jurisdiction of the court and cannot afterwards dispute it. The cases cited by the counsel all arose on contracts, which at common law a married woman was unable to make and which she could not make under the enlarged powers conferred by the act of 1848. Being absolutely void at their execution, they could not be validated by any subsequent act or process.

OPINION, MR. JUSTICE GREEN:

This is a curious and an extraordinary case. The appellant asks us to reverse a decree made by the old District Court of Allegheny county in the year 1849, upon an appeal which was not taken until the year 1887. She claims that she was under the disability of coverture from the time of the decree until November 9, 1884, when her husband died, and that she was entitled to five years from the death of her husband within which to take her appeal, under the act of 1791, because the act of 1874, which limits the time to two years, does not apply to cases in which the judgment or decree was entered prior to its passage. In 1846, just before her marriage, she had made a deed of trust of all her property, real and personal, to a trustee, to hold it for her sole and separate use, without power of alienation or incumbrance. She had, however, a power to dispose by will of the whole trust estate. The trustee accepted the trust and performed its duties until in 1849, when by a proceeding in the form of a bill or petition, and an answer, signed by both the appellant and her husband, in the District Court of Allegheny county, that court was induced to, and did, make a decree directing the trustee to reconvey to the appellant the entire property and estate which had become vested in him by virtue of the deed of trust. In the answer, the appellant and her husband describe themselves as " defendants in this bill," and they " severally waive the issuing and service of a subpœna," and severally make answer to the bill, admitting all its averments, and formally consent that the decree prayed for shall be made. The decree was made on the same day, April 28, 1849, that the bill and answer were filed, and on the ninth day of May, 1849, the deed of reconveyance was execut-

ed and delivered, recorded in the proper office on the ninth of June, 1874: the entire estate remaining in the hands of the trustee was delivered to the appellant, the trustee retired from his trust, and never after performed any of its duties.

The deed of reconveyance ostensibly re-clothed the appellant with the absolute ownership of the property in question, so that thereafter she was apparently vested with the unclogged estate in fee simple in her lands, in the same manner and with the same effect as she held the same immediately prior to the execution of the deed of trust. It is not possible to say of the decree which produced this result that it worked any injury to the appellant or to her interests or rights, since it gave her a larger estate in her lands than she held before it was made. She is, therefore, not in the category of ordinary suitors, in the appellate courts, who seek the reversal of adverse decrees made in the lower courts upon the ground that those decrees affect their rights, interests, or estates injuriously. Nor can she say that the decree in this case was made in opposition to her wishes. On the contrary, it was made at her instance, by her requirement, upon the express solicitation of herself and her husband, in a formal and ceremonious application by them both for that very purpose. It is idle to speak of the proceeding in the District Court as a proceeding by the trustee for his mere discharge. It was beyond all question a proceeding in the interest of the appellant for the specific purpose of doing away with the deed of trust and of giving her the absolute ownership of her estate instead of the limited and restrained interest which she held under the trust. She asked the District Court of Allegheny county to make that decree, and it was made because she asked it. She reaped the full benefit and advantage of the decree, and continued to do so for an uninterrupted period of thirty-eight years, indeed for several years after her disability of coverture was removed by the death of her husband. After his death she became seised absolutely in fee simple of her real estate, precisely as she was before the deed of trust was made.

The law has now done for her precisely that which the decree of the court did for her if it was a valid decree, and if we should now reverse that decree because it was unadvisedly made, we would be doing a vain and useless thing. We can-

not now restore the trust. No judgment that we can now render will re-establish the deed of trust, and re-clothe her with the fettered estate which she held under its operation. If we should now hold that the decree was erroneous because her power over the trust estate could not be enlarged by herself or by a court, it would be a mere brutum fulmen; it would accomplish nothing, she would still hold the estate in fee simple and unfettered as well after such a ruling by us as before. Practically we would be merely expressing the opinion that the District Court in the year 1849 committed an error in rendering a judgment. Why should we do this? Is there any reason appearing on this record why we should now reverse that judgment? Absolutely none. It does not appear that any conveyance has been made by her by virtue of the decree, which she desires, or which it is her interest now to have avoided or defeated. So far as this record discloses she always did hold her estate during the life of her husband; whether upon the trusts of the deed or not, is immaterial, as no practical question in relation to that tenure is raised, and since his death she holds it free of the trust, notwithstanding any decision we may or can make regarding it. If her husband were still living and he and she were seeking to restore the trust estate, we could at least see how a decree of reversal might produce an effect different from that produced by the decree. Or if she had made some conveyance of her lands or a part of them, and was now seeking to invalidate it by showing the invalidity of the decree, we could, of course, perceive a reason for asking our intervention. But there is nothing of that kind on this record. The death of appellant's husband in 1884 is averred in the history of the case and not denied, and, indeed, is essential to her right of appeal after the long delay in its exercise, and as his death revests her as of her former estate in the lands, we are bound to take notice of the fact and give it its proper consequence in the case. We are, therefore, not made acquainted with any matter of fact by anything appearing on this record which either requires us to interfere, or justifies us in reversing the decree of the court below in the very extraordinary circumstances in which we are asked to exercise our authority, and that consideration alone is a sufficient reason for refusing to do so.

But there are other reasons equally cogent. The appellant is the only person who complains of the decree. But it was made because she asked it to be made. It was she who procured it. How can she now ask us to say that the District Court committed error in making a decree which she herself solicited. She did not say, in that court, that it was error to do so. She took no exception to it there. If she asked that court to make the decree, how can she ask us to unmake it? If she were sui juris at that time, as a matter of course, she would not be heard in error here. But why should she be allowed such a privilege on account of her coverture? Married women have no license to do such unconscionable and unreasonable things as this, especially when they have enjoyed the fruits of the judicial action they solicited and procured for nearly half a century. Courts of justice are not convenient playthings to be used by designing persons for their private purposes, even though they be married women. Such tribunals cannot be expected to stultify themselves in order to gratify the wrongful or dishonest purpose of a litigant, because she has a husband. It must be borne in mind, that it is the decree of a court that is proposed to be set aside, and not a mere transaction between private parties. But even as between private parties the proposition that a married woman cannot be estopped by her own act is by no means of universal application.

In Couch v. Sutton, 1 Gr. 114, we held that a married woman may be estopped from claiming under an unrecorded deed, if she sees one in possession and making valuable improvements, under a title that is good against any other title that she may have and he has no notice or knowledge of her title under such deed. In McCullough v. Wilson, 21 Pa. 436, we held that though a mortgage by husband and wife were invalid as to the interest of the wife, and a judgment thereon invalid for want of description of the premises, yet after levari facias and alias levari facias issued thereon describing the premises, if the husband and wife procure a person to purchase the mortgage they and their heirs are estopped from denying the validity of the mortgage and judgment thereon, and are concluded by a sheriff's sale of the premises under such proceedings. LOWRIE, J., in delivering the opinion, said: "May a married woman thus

bind herself by acting with her husband? Why not? The fact that she can be sued with her husband entitles her, with him, to do all proper acts relative to the defence of her rights that are involved in the suit. It was proper for her interests that she and her husband should make an arrangement for time in order to prevent a sacrifice of her property. Both are therefore bound to all the consequences of the arrangement."

In Fryer v. Rishell, 84 Pa. 521, we decided that where a married woman has received full consideration for her assignment of a balance due her on a sale of her separate estate, and by her own act has disabled herself from restoring the consideration, equity will not permit her to repudiate the assignment on the ground that she had not acknowledged the same. MERCUR, J., in the course of the opinion, said: " When a married woman asks to be relieved from her contract, equity requires that the rights of the other party shall be regarded. In strict law a married woman has no power alone to give a valid bond and mortgage to secure the payment of purchase-money on real estate which she has bought, yet when necessary to prevent great injustice they will be enforced in equity according to the necessities of common justice: Glass v. Warwick, 40 Pa. 140."

Brown's Appeal, 94 Pa. 362: a married woman loaned money to her husband out of her personal estate and as security therefor took a judgment in the name of a trustee. To enable her husband to obtain a new loan she certified in writing, with the assent of her husband, that the judgment to secure this new loan should take precedence of her judgment. This certificate was entered on the record and attested by her husband, and the loan was then made and the judgment given. The husband's real estate was sold at sheriff's sale, and in distributing the proceeds, *Held*, that this certificate was an executed contract, and operated as an immediate and unconditional release of her prior right of lien to the amount of the new judgment, and she could not repudiate it on the ground that she was a feme covert.

In Powell's App., 98 Pa. 403, we held that a married woman may at her husband's request execute to him a valid and effectual release of a legacy charged upon land whereof he is seised, without his joinder and without a separate acknowledgment. Where there is no consideration for such a release, and the

married woman does not intend the same as a gift, it is invalid as to her husband, and as to such of his creditors as stand on his footing.   As to such of her husband's creditors as have advanced their money subsequent to the execution of the release, with knowledge thereof, and on the faith of the same, the married woman will be estopped from denying its validity.   In Grim's App., 105 Pa. 385, we said, CLARK, J.: " A married woman should be held to the observance of that good faith in her dealings with the world to which others are bound ; her protection is for the prevention of fraud ; she should not thereby be enabled with impunity to defraud others."

Without continuing these citations it is enough to say, that this appellant was competent to appear in the District Court jointly with her husband, and ask for the decree that was made revesting her estate in her lands in herself absolutely.   It was not a decree divesting her of any estate but increasing that which she already held.   It was not to her disadvantage but to her benefit to have this done.   Our refusal to disturb that decree is not divesting her of her title by way of estoppel, and hence the cases which hold that a married woman cannot be deprived of her title to land by estoppel are not applicable. There is therefore no reason arising out of that doctrine why we should now convict the District Court of error, at the instance of the appellant, in making a decree almost forty years ago, which she herself asked and induced that court to make.

If, however, as matter of fact she availed herself of that decree and made sales or mortgages of her lands, by virtue, and upon the faith of it, and obtained money from such purchasers or mortgagees, which she has never restored but still holds, then there is the strongest possible reason why we ought not to reverse that decree at this late date upon her application.   Such purchasers or mortgagees are not parties to this proceeding, they are not before us and have had no hearing, and it would be a judicial outrage to deprive them of their titles without notice, without a trial, and without their having a day in court, upon the mere application of their grantor, who has taken their money by means of the very decree she now seeks to avoid.   That which we are asked to do is a gross anomaly, to wit, to reverse the decree of a lower court at the instance of the party who procured it to be made.   The anom-

aly is still more gross because of the fact that the decree is not injurious to the appellant but beneficial, increasing and enlarging her estate, and in no sense diminishing, injuring, or impairing it. No reason founded upon any possible injury to her, for such extraordinary action on our part, appears upon the record. She has acquiesced in the decree for nearly forty years, and we can imagine no possible reason of an honest, equitable, or legitimate character for our taking such a step. We can very easily understand how a reversal of this decree, now, may operate to the great injury of innocent persons who are not before us, and who may have acted upon the faith of the decree; and this consideration admonishes us that we ought upon no account to interfere with the existing state of things, except upon the most extreme and urgent cause. As no such cause is shown we decline to interfere. There can be no question that the District Court had jurisdiction of the subject matter, and if there was any objection as to the form of the proceeding, the appellant alone is responsible for it and cannot now be heard to aver her own wrong in this respect.

> Decree affirmed, and appeal dismissed at the cost of the appellant.

