# Wells *et al.* *versus* McCall *et al.*

1. A donor may create an active, operative trust, to preserve an estate and protect it against the husband or creditors of a beneficiary or to make it conduce to some useful and legal but temporary purpose, without infringing on the law against perpetuities.

2. Entire freedom of disposition in a beneficiary, would impose an unreasonable restriction on the power of a benefactor to provide for the beneficiary's future support.

3. A trust will be supported notwithstanding the cestui que trust is a feme sole, provided that it be done in immediate contemplation of marriage.

4. "Immediate contemplation of marriage," means a marriage presently in view of the donor to take place with a particular person a short time after the instrument is to go into effect.

5. The marriage must be in immediate view when the trust is created.

6. On the termination of the coverture, the trust falls and is not revived by a second marriage.

7. That a marriage is in view, need not appear by the instrument creating the trust.

8. The creation of the trust is evidence that the marriage was in contemplation of the donor, and when this is followed within a reasonable time by its consummation, it concludes the proof.

9. McBride v. Smyth, 4 P. F. Smith 245, approved.

March 4th and 5th 1870. Before READ, AGNEW and SHARSWOOD, JJ. THOMPSON, C. J., at Nisi Prius.

Appeal from the decree of the Supreme Court at Nisi Prius: in Equity: No. 45, to January Term 1869.

[Wells *v.* McCall.]

This was a bill filed by Kirk B. Wells, and Mary W. his wife (formerly Mary Wilcocks) in her right, against Peter McCall, Harry McCall and Alexander Wilcocks, trustees under the will of Joseph R. Ingersoll, deceased, and Charles Ingersoll, executor of the said will, and in his own right.

This was an amicable bill for the partition and division of the estate of Joseph R. Ingersoll, deceased.

Mr. Ingersoll died in February 1868, leaving a will dated in 1862, and republished in 1864, of which the material parts are these :—

" I give, &c., to my said nephew, Charles Ingersoll, and to the trustees hereinafter named of Mary Wilcocks, now living with me, the niece of my late wife, his and their heirs, executors, administrators and assigns, the sum of $100,000, equally to be divided between them, share and share alike; that is to say, one-half, or $50,000, to Charles Ingersoll, &c., and the other half, or $50,000, to the trustees hereinafter named of Mary Wilcocks, &c.   These two bequests are to take effect in preference of all others.

" I nominate and appoint Peter McCall, Harry McCall and Alexander Wilcocks, and the survivors and survivor of them, trustees of the said Mary Wilcocks, with power and authority to receive the aforesaid legacy and sum of money or effects for her sole use and benefit, whether she be married or single, free from any debt, control or liability of any husband, and, under this restriction, subject to her direction and disposition during her life, and, after her death, subject to her last will and testament.

*    *    *    *    "The rest, residue and remainder of my estate and effects, which may belong to me at the time of my death, I give, devise and bequeath one-half thereof to Charles Ingersoll (my nephew) aforesaid, his heirs, executors, administrators and assigns; and the other half thereof to the trustees aforesaid of Mary Wilcocks, their heirs, executors, administrators and assigns, in like manner and with the same limitations, power and authority, uses and purposes, as have been expressed with regard to the one-half of $100,000 hereinbefore given to said trustees."

The bill set forth these provisions of the will, and that, since the testator's death, his niece, the complainant Miss Wilcocks, had married the complainant Mr. Wells, and averred that they were advised that, under the said will, Mrs. Wells was entitled to an equitable estate in and to one-half of the testator's estate; that the trust attempted to be created for her was inoperative; and prayed for—

1. An account ;

2. Partition and division of the said estate between the complainants and the defendants ;

3. An injunction restraining the said defendants from making partition and division among themselves, &c.

[Wells v. McCall.]

To this bill the defendants filed separate answers. The trustees averred "That the said Mary Wilcocks, from her early youth to the time of the testator's death, was an inmate of his house, and for many years prior thereto was the only member of his family who resided with him; and that she kept his house, and by her faithful care and devotion to his comfort, contributed largely to his happiness.

"And they aver, upon information and belief, that at the time of the execution of the said will and codicil, the said Mary Wilcocks was engaged to be married to the said Kirk B. Wells, and continued to be so until the testator's decease.

"They do not know, and therefore cannot aver, that the fact of this engagement was made known to the testator; but they aver, upon information and belief, that the testator did contemplate that a marriage would take place between the plaintiffs after his decease, and spoke of it as a thing likely to occur.

"That the said intended marriage was not solemnized during the life of the testator, by reason of the said Mary's unwillingness to leave his residence in his declining years; but the said marriage was solemnized about a month after his decease.

"And the respondents submit that the provisions of the said will, creating the trust for the said Mary, were made in contemplation of the said marriage."

They submitted to act as the court should direct.

The separate answer of the defendant, Charles Ingersoll, averred as follows:—"I have been informed and believe, that the said Kirk B. Wells and Mary Wilcocks, now Mrs. Mary W. Wells, were at the time of and for several years before the periods of the making and republishing of the said will, and thence continuously to the period of the said marriage, under mutual engagement to marry, their marriage to be solemnized upon the said testator's death, and that the said mutual engagement to marry, and proposed solemnization of the said marriage at the period of his death, were, as I have also been informed and believe, well known to the said testator; and, as the said testator, by the trust in the said bill mentioned, provided, in contemplation, as I firmly believe, of solemnization of the said marriage at the period of his death— the more especially as the said plaintiff, Kirk B. Wells, was in trade, and yet is, and his own property and means liable to the hazard thereof—the estate and effects devised by him to the said Mrs. Mary W. Wells, I deny the said trust to be, as insisted in the said bill, inoperative and void."

The case was heard at Nisi Prius, upon bill and answer, before Mr. Justice Williams, who dismissed the bill on the 20th of March 1869.

The plaintiffs appealed, and assigned the decree for error.

14 P. F. Smith—14

[*Wells v. McCall.*]

*W. H. Rawle* and *R. C. McMurtrie* (with whom was *Strong*), for appellants.—A married woman has no other powers over her separate estate than those given by the instrument creating the trust: Lancaster *v.* Dolan, 1 Rawle 231. When coverture ceases by the death of the husband, restraint upon the wife's separate estate is removed: Smith *v.* Starr, 3 Wharton 66; Hamersly *v.* Smith, 4 Id. 126; Harrison *v.* Brolaskey, 8 Harris 302; Faries' Appeal, 11 Id. 30; Van Rensselaer *v.* Dunkin, 12 Id. 252; Talbot *v.* Calvert, Id. 328; Dubs *v.* Dubs, 7 Casey 154; Nice's Appeal, 14 Wright 148. A trust for the separate use of a married woman will not, in Pennsylvania, attach unless created in immediate contemplation of marriage: McBride *v.* Smyth, 4 P. F. Smith 250; Potts's Appeal, 6 Casey 168. "*Immediate,*" popularly means "instant," "present;" the technical meaning is the same. Deeds for the separation of husband and wife are valid, provided their object be an actual and immediate, and not a contingent or future, separation: Hutton *v.* Duey, 3 Barr 104; Dillinger's Appeal, 11 Casey 357; Hitner's Appeal, 4 P. F. Smith 114. Articles for future separation will not be enforced: 2 Story's Eq. Jur. § 1428; Adams' Eq. 44. The same application of the word must be made to marriage: Legge *v.* Goldwin, Cases Temp., Talbot 20; Paige *v.* Horne, 9 Beavan 578. The fact that a trust is created in contemplation of marriage should appear by the instrument. The trust here was to receive the legacy of one *sui juris*, and this gives her the legal estate. To give effect to the words "subject to her direction and *disposition* during her life, and after her death subject to her last will and testament," they must be construed to give the legatee an absolute estate. A power of "*disposing of*" an estate, whether principal or income, gives an absolute estate: 1 Roper on Legacies 429; 2 Jarman on Wills 189; Dice *v.* Sheffer, 3 W. & S. 419; Smith *v.* Fulkinson, 1 Casey 109; Diehl's Appeal, 12 Id. 120; Brown's Estate, 2 Wright 293; and, if the estate be a separate one, enables the cestui que trust to *give* the property: Towers *v.* Hagner, 3 Wharton 48; Hoover *v.* The Samaritan Society, 4 Id. 453.

*J. M. Thomas* and *I. Hazlehurst*, for appellees.—A separate estate may be created in favor of an unmarried woman, which will be valid during coverture. The case of McBride *v.* Smyth, 4 P. F. Smith 245, is not the rule: Fullet *v.* Armstrong, 4 Myl. & C. 377. The following cases were examined and compared by the counsel: Beable *v.* Dodd, 1 T. R. 193; Anderson *v.* Anderson, 2 Myl. & Cr. 427; 1 Sugden on Powers 206; Woodmeston *v.* Walker, 2 R. & M. 197; Brown *v.* Pocock, Id. 218; Barton *v.* Briscoe, Jacob 603; Jones *v.* Salter, 2 R. & M. 208. The doctrine in Massey *v.* Parker, 2 M. & K. 174, was speedily overturned: Davies *v.* Thornycraft, 6 Simons 420. Lancaster *v.* Dolan, 1

[Wells v. McCall.]

Rawle 231, is the same as this.    There is a difference between a trust created by the will of a testator for protection against the future marriage of another and a trust created for the like purpose by conveyance of the party owning the estate: Pullen v. Rianhard, 1 Wharton 520; Wallace v. Coston, 9 Watts 137; Lyne v. Crouse, 1 Barr 113; Thomas v. Folwell, 2 Wharton 11; Dorrance v. Scott, 3 Id. 309.    In McBride v. Smyth the question of the trust for the testator's daughter was one of minor importance, another question was the principal one.    A trust may be created for the separate use of an unmarried woman: Snyder v. Snyder, 10 Barr 423; Shirley v. Shirley, 9 Paige 363; Nix v. Bradley, 6 Rich. Eq. 43; Fears v. Brooks, 12 Geo. 197; Fellows v. Tann, 9 Alab. 999; Beaufort v. Collier, 7 Humph. 487; Fisher v. Taylor, 2 Rawle 33; Vaux v. Parke, 7 W. & S. 19; Norris v. Johnson, 5 Barr 289; Ashhurst v. Given, 5 W. & S. 323; Holdship v. Patterson, 7 Watts 547; Brown v. Williamson, 12 Casey 338; Eyrick v. Hetrick, 1 Harris 491; Barnett's Appeal, 10 Wright 392.    Mackason's Appeal, 6 Id. 330, only establishes that a settlement cannot be made by a person *sui juris* of his own property free from liability to his creditors.    That the trust was created in contemplation of marriage need not appear in the instrument.    Parol evidence to show it may be resorted to: 1 Greenleaf on Ev. 325–7; Brown v. Thorndike, 15 Pick. 400; Doe v. Martin, 1 N. & Man. 524; 1 Jarman on Wills 342 (in note); 2 Id. 525; Rogers v. Smith, 4 Barr 99; Rewalt v. Ulrich, 11 Harris 391; Bush's Appeal, 9 Casey 86; Jones's Appeal, 7 P. F. Smith 372.    Mrs. Wells had only a life estate with power of appointment.    The absolute estate to the trustees would not affect the amount of her estate: Hill on Trustees 239; Koenig's Appeal, 7 P. F. Smith 354.    A power of appointment does not enlarge a life estate: Jackson v. Robbins, 16 Johns. 388; 2 Kent's Com. 526; Flintham's Appeal, 11 S. & R. 19; Morris v. Phaler, 1 Watts 390; Hess v. Hess, 5 Id. 191; Girard L. Ins. Co. v. Chambers, 10 Wright 490; Fisher v. Herbell, 7 W. & S. 63; Porter v. Thomas, 23 Geo. 467; Anderson v. Dawson, 15 Vesey 532.    The gift cannot be construed without treating "during her life" as consistent with a fee which it is not: Fisher v. Herbell, 7 W. & S. 63.    If she has a fee it is equitable only: Brown v. Wright, 8 Wright 224; Jones's Appeal, 7 P. F. Smith 369.    "Disposition" is often used in connection with estates for separate use; Ex parte Ray, 1 Madd. 199; Prichard v. Ames, 1 T. & R. 222; Pullen v. Rianhard, 1 Wharton 515; Yardley v. Raub, 5 Id. 118; Methodist Ep. Church v. Jaques, 3 Johns. Ch. 87; Reid v. Lamar, 1 Strobhart's Eq. 37.

The opinion of the court was delivered, May 5th 1870, by
AGNEW, J.—The late Joseph R. Ingersoll, Esq., by his will

[Wells *v.* McCall.]

made in 1862, republished in 1864, and proved in 1868, bequeathed $100,000 to his nephew, Charles Ingersoll, and to the trustees of Mary Wilcocks, a niece of his late wife. " One-half, or $50,000, to Charles Ingersoll, his heirs, executors, administrators and assigns, and' the other half, or $50,000, to the trustees hereinafter named, of Mary Wilcocks, their heirs, executors, administrators and assigns." He directs these two bequests to take effect in preference of all others, and proceeds thus: " I nominate and appoint Peter McCall, Henry McCall and Alexander Wilcocks, and the survivors and survivor of them, trustees of the said Mary Wilcocks, with power and authority to receive the aforesaid legacy and sum of money or effects for her sole use and benefit, whether she be married or single, free from any debt, control or liability of any husband, and, under this restriction, subject to her direction and disposition during her life, and, after her death, subject to her last will and testament." After certain specific legacies, he devises and bequeaths one-half of the residue and remainder of his estate to the same trustees of Mary Wilcocks, their heirs, executors, &c., in like manner and with the same limitations, power and authority, uses and purposes, as were expressed with regard to the $50,000 given to the said trustees. Mrs. Wells' bill in this case was to declare this trust inoperative, and to compel an account by the executor of the will, and a partition between Charles Ingersoll and herself. The important question is, whether the trust created by Mr. Ingersoll is valid and effectual; Mary Wilcocks being a feme sole at the death of the testator. In Barnett's Appeal, 10 Wright 392, it was held, that a devise to trustees to lease real and invest personal estate, to collect the rents, interest and profits, and to pay over to the three children of the testator during their lives, is an active, operative trust, and is not executed by the statute, or by any principle of the state common law, notwithstanding the cestui que trusts were males and *sui juris*. This case has been followed by a number of decisions running in the same direction, though diversified in circumstances, all supporting the power of the donor or devisor to control his gift by creating an active, operative trust, when necessary, to promote a proper and useful purpose, without infringing upon the law against perpetuities. Previous to Barnett's Appeal, the doctrine of trusts had not been uniform or consistent, owing to the strife between the will of the donor and that public policy which forbids restraints on alienation. In Dodson *v.* Ball, 10 P. F. Smith 492, we noticed these opposing principles underlying the doctrine of trusts, and the predomination of each, as the judicial mind happened to incline to the one or to the other. Arranging the cases in their respective classes, Lancaster *v.* Dolan, 1 Rawle 231, decided in 1829, led the column in favor of the right of the donor to control his gift; Kuhn *v.*

Newman, 2 Casey 227, decided in 1856, headed the opposite column in favor of the policy of striking down trusts that before had been believed to be valid. Then came Barnett's Appeal, decided in 1864, overruling Kuhn v. Newman, and turning back into the former direction which has been followed by others. Looking, therefore, at the earlier and later authorities, it must be taken to be settled that an active and operative trust may be created to preserve an estate, and protect it against the husband or creditors of a beneficiary, or to make it answer some useful and legal but temporary purpose, without infringing upon the law against perpetuities.

We are met in this case with the objection that Mrs. Wells, then Miss Wilcocks, was a feme sole at the testator's death, when his will took effect, and it is contended that the trust being intended for a protection against a coverture not then existing, could not take effect. The question therefore arises upon the power to provide a trust for a future marriage, and confronts us with the old and opposing forces already referred to. The ground of public policy invoked to destroy the trust, is the restraint it imposes upon the freedom of alienation; a restraint which, in Smith v. Starr, 3 Whart. 62, and Hamersly v. Smith, 4 Id. 126, is recognised as being ineffectual, as well in the case of a female as in that of a male, when repugnant to the nature of the gift. If therefore an absolute estate in personalty or a fee in realty be intended to be vested in a cestui que trust, her condition as a feme sole would, on this principle, render inoperative any attempt to fetter her power over the estate by means of a trust for a future and as yet uncertain purpose. But on all hands it is admitted that entire freedom of disposition would impose an unreasonable restriction upon the power of a parent (or indeed any other benefactor) to provide for the future support of a daughter. And Rogers, J., says precisely this in Smith v. Starr, supra; while the whole doctrine of Lancaster v. Dolan, supra, and its sequents is filled to saturation with this admission, and its principle acted upon therein. The necessary consequence of this conflict between private right and public interest is a compromise, which yields the doctrine of policy so far as to enable the donor to impress a trust upon his gift when it is done in "immediate contemplation of marriage." This is conceded in Smith v. Starr, Hamersly v. Smith, Cochran v. O'Hern, 4 W. & S. 95 (per Grier, P. J.), and in McBride v. Smyth, 4 P. F. Smith 245, a case most vigorously attacked by the trustees of Mrs. Wells, but which we think states the true doctrine in this state. The doctrine is supported also by Lancaster v. Dolan, Wallace v. Coston, 9 Watts 137, Lyne's Executor v. Crouse, 1 Barr 113, and Rogers v. Smith, 4 Id. 93. In all these cases the trust was by deed,

[Wells *v.* McCall.]

created by the owner of the property while a feme sole, to protect her estate upon a future marriage, and without a recital of the intended marriage; and in none was the validity of the trust doubted for a moment. We take it, therefore, as settled, that the trust will be supported, notwithstanding the cestui que trust is a feme sole at its creation, provided that it be done in immediate contemplation of marriage. This leads us to inquire what is meant by an immediate contemplation of marriage. Evidently the expression means in contemplation of an immediate marriage —one presently in view of the donor, and to take place in a short time after the instrument is to take effect—in contemplation of marriage with a *particular* person, says Gibson, C. J., in Hamersly *v.* Smith, *supra.* That the marriage must be in immediate view at the time of the creation of the trust, is proved by all the cases which decide that on the termination of the coverture the trust falls and is not revived by a second marriage, for if any marriage would answer to the provision for the trust, a second would as well as the first. But a second marriage is evidently a thing not in immediate contemplation, being cut off from view by the uncertainties of a first marriage, the death of the husband, and an intention to marry a second time. The marriage then being one in view of the donor or devisor at the time of creating the trust, the question arises, how is this to appear? It is argued with plausibility that it must appear in the instrument creating the trust. At first this position seemed to me to have weight. But clearly it is contrary to the whole current of decision. An examination of the foregoing cases, to which may be added Snyder *v.* Snyder, 10 Barr 423, wherein the trust has been supported in favor of married women who were sole at the time the estate vested, will discover the fact that in none did the contemplated marriage appear specifically in the instrument creating the trust. It is asking too much of us, to suppose that the bar and the bench have suffered so many cases to pass without question, if it were deemed to be the rule that the intended marriage should be recited in the instrument. It is argued that it leads to uncertainty in the title, and that after a number of years a conveyancer would find it difficult to ascertain whether a marriage had been in immediate contemplation or not. Perhaps the easiest answer would be, that the law has been so understood since Lancaster *v.* Dolan, more than forty years, and the evil has not made itself felt, or drawn forth an adverse decision. But a contemplated marriage is a fact that discloses itself, and is perhaps as easily ascertained by concomitants as the existence of any other fact not patent on the face of the paper, on which titles sometimes depend. Such is always the case in estates upon condition precedent or subsequent, or dependent on entry or re-entry, &c.

[Wells v. McCall.]

There can be no complaint of any want of notice to lead to the fact, for the creation of the trust itself puts every one on inquiry, and leads at once to knowledge.  The creation of the trust constitutes the evidence of the fact being in the contemplation of the donor or devisor, and when this is followed within a reasonable time by consummation of the marriage, it concludes the proof.  If the uncertainty be too great, the remedy must come from the legislature, for we are incompetent to change a rule of property sanctioned by so many decisions.  To do it by judicial decision would overturn many trusts having their root in Lancaster v. Dolan, Wallace v. Coston, Lyne v. Crouse, Rogers v. Smith, Smith v. Starr, Hamersly v. Smith, et id genus omne.  In all those cases in which an owner of an estate has conveyed in trust for herself upon marriage, without a recital of the particular marriage to take place, the very fact that one sui juris thus limits her own power upon marriage, affords a strong presumption that a speedy marriage is intended.

Having these principles in view, it is obvious that the creation of the trust for Miss Wilcocks by Mr. Ingersoll, followed by her almost immediate marriage after his death, in connection with the facts set forth in the answers of her well-known engagement to Mr. Wells, and the testator's knowledge of it, leave no doubt that the trust was created with a view to this particular marriage, and is therefore operative as well as active, as it clearly is.

The trust being valid, the quantity of estate or interest vested in Mrs. Wells is not material, for whether it be for life or absolute, the trust remains during coverture, which cannot outlast her life, to protect the estate from the control of her husband and from any liability she might be influenced to create for the payment of his debts.  This is the very restriction the testator intended to impose upon his gift that it might not be diverted from her to him or to his creditors, and to effectuate this purpose he placed it in the hands of the trustees.  Even if in all other respects her estate was by the terms of the will to be subject to her direction and disposition during her life, yet as to this restriction the trustees must still preserve their grasp of the fund to prevent that direction and disposition from being exercised in favor of the forbidden object.

The decree of the Court of Nisi Prius is therefore affirmed at the costs of the appellants.