MARY E. T. BRISTOR v. T. T. TASKER ET AL.

[RULE ON MR. VAN HORN.]

APPEAL BY PLAINTIFF FROM THE COURT OF COMMON PLEAS NO. 2 OF PHILADELPHIA COUNTY.

Argued April 25, 1890—Decided May 19, 1890.
[To be reported.]

1. Under the rules of the Supreme Court requiring that docket entries should be printed, the appellant's paper-books must contain a literal copy of those entries as they appear upon the record of the court below ; to present them in an altered or garbled form is an offence, which if committed intentionally and to deceive will be punished by disbarment.

2. Upon a bill filed by a cestui que trust against her trustee, her husband, and the guardian of her children, to set aside a trust for her use during life, and after her death in default of appointment by her, for the use of her right heirs, the correct practice, although the averments of the bill are admitted by the answers, is to refer the case to a master for a report upon the facts.

3. The deed of a single woman, not in contemplation of marriage, conveying her property to a trustee, in trust to pay over to her the income during life, and after her death in trust for her appointees, or, in default of appointment, her right heirs, creates a mere passive trust which may be terminated at any time at the will of the cestui que trust : Dodson v. Ball, 60 Pa. 492 ; Yarnall's App., 70 Pa. 335.

4. Equity will set aside a deed from a single woman to her grandfather, creating an irrevocable separate use for the grantor, when it was not executed in contemplation of marriage nor with the intent to make an irrevocable gift, but upon an assurance by her grandfather and mother

Statement of Facts.

that it could be revoked and without the advice of counsel upon the point, and the only purpose of its execution has been accomplished.*

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 250 January Term 1890, Sup. Ct.; court below, No. 891 December Term 1888, C. P. No. 2, in Equity.

On January 14, 1889, Mary E. Tasker Bristor filed a bill in equity against Thomas T. Tasker and George R. Bristor, averring, in substance, that on February 28, 1879, the plaintiff, being then unmarried and not in immediate contemplation of marriage, executed a deed conveying to her grandfather, Thomas T. Tasker, all her estate, real, personal and mixed, in trust to pay to the plaintiff or to permit her to receive during her life, all the rents, interest and income thereof, for her sole and separate use, and at her death in trust for the use of such persons as she might appoint by will, or, in default of such appointment, for the use of her right heirs, with a further provision that the trustee might sell and reinvest with the plaintiff's written consent and approbation; that the plaintiff had no reason or motive for making such deed, but was persuaded by her said grandfather and her mother to do so, in order that her sister, who had made an improvident marriage, might be influenced to execute, with her husband, a conveyance of her property upon similar trusts; that the plaintiff, having been informed by her grandfather and mother that, as she was a single woman not contemplating marriage, her case was different from that of her sister, and she might, at any time afterwards, if dissatisfied with such trust, revoke it, called at their request at the office of their counsel, who prepared three trust deeds, one of which was then executed by the plaintiff's mother, another by her sister and husband, and the third, being the one above recited, by the plaintiff; that by mistake said counsel, supposing that the deed of the plaintiff was to be similar to that of her married sister, omitted therefrom any power of revocation, without advising her thereof, and she executed it believing that she had power to revoke or change it at any future time, and remained under that impression until about two years prior to the filing of the bill, when she was informed by her counsel that the deed con

---

* Cf. Merriman v. Munson, 134 Pa. 114.

tained no such power; that she was not advised, when she executed it, and did not know, that if she should marry and bear children she could use no part of her principal estate; that on November 2, 1880, the plaintiff was married to George R. Bristor, and subsequently she had by him the following children who were minors, viz.: Mary T., George C., William C. and Margaretta G. Bristor; that the plaintiff and her husband had executed a deed revoking said trust and the trustee had reconveyed the trust estate to the plaintiff; and that all the real estate had been sold and distributed. The bill prayed for a decree that said deed of trust was executed by the plaintiff under a mistake of fact; that it be adjudged to have been revoked and set aside, and that it be canceled and returned to the plaintiff.

On January 14, 1889, the defendant, Thomas T. Tasker, answered the bill as follows:

"I admit all and several the allegations contained in the several paragraphs of said bill that are material, and particularly that said trust was not created in immediate contemplation of marriage, and that all the real estate conveyed to defendant has been sold, and that said trust was created under a mistake of fact. I, accordingly, by indenture dated October 27, 1888, reconveyed the estate and property heretofore granted upon trust, as in said bill in equity is described, to said plaintiff, Mary E. Tasker Bristor, and pray the court to ratify and confirm such reconveyance."

On December 7, 1889, the West Philadelphia Title & Trust Company was appointed by the court guardian ad litem of the minor children of the plaintiff named in the bill, and on December 9, 1889, said guardian filed an answer setting forth:

"That respondents admit the fact of the record of the deed set out in the first paragraph of said bill; that respondents know nothing of the other facts set out in said bill of their, respondents', own knowledge, but, on inquiry as to the truth thereof, respondents are informed that said facts are true, and respondents know of no reason for doubting the truth thereof. Respondents, therefore, submit themselves to the court for such decree as to the court shall seem meet and proper."

The cause having been heard, upon bill and answers, the court on December 28, 1889, entered the decree, "Bill dis-

missed," HARE, P. J., delivering an oral opinion. Thereupon the plaintiff took this appeal, specifying that the court erred:

1. In dismissing the plaintiff's bill.
2. In not revoking and canceling the deed of trust.

On April 9, 1890, the appeal was called for argument in the Supreme Court, when the counsel for the appellant, *Mr. M. A. De Long Van Horn*, filed the appellant's paper-book, in which was printed what purported to be a copy of the docket entries containing the following minute: "Dec. 28, 1889, bill dismissed in order that the Supreme Court might decide the case." Inferring therefrom that the court below had not considered the merits of the case, but had made merely a pro forma decree, the Supreme Court, without hearing the arguments, quashed the appeal and ordered that the case be sent back for a decision by the court below upon the merits.

On April 14, 1890, having learned that the record of the case did not contain the minute printed in the paper-book and quoted above, the entry on the record being simply " bill dismissed," the Supreme Court entered a rule upon Mr. Van Horn to show cause why he should not be punished for misbehavior in his office as attorney, in misstating the docket entries in his paper-book, and directed the prothonotary to serve a copy of the rule upon him.

On April 21, 1890, Mr. Van Horn filed his answer to the rule, setting forth that it was the respondent's impression, from remarks made by the president judge of the court below at the time of entering the decree therein, that the decree was as printed in the paper-book, but after the quashing of the appeal on April 9, 1890, he had ascertained that he was mistaken and that the case had been decided upon its merits; that on April 14, 1890, the respondent appeared in the Supreme Court for the purpose of explaining how the mistake occurred, but before he had an opportunity to do so, the court entered the pending rule; that the respondent had no intention or purpose of doing any wrong, or of improperly altering, changing or misstating any part of the decree; that, being inexperienced, he was not aware that the addition of the words " in order that the Supreme Court might decide the case," in printing the decree, was an offence, but supposed that to be the proper entry. Ac-

companying the answer of the respondent were affidavits of Mr. Alexander Simpson, Jr., appearing for the guardian, and Mr. W. Henry Sutton, appearing for the trustee, stating their recollection of the oral remarks made by the court below at the time of passing the decree, and showing that the court mentioned, as one reason for dismissing the bill, the desirability of having the case passed on by the Supreme Court, before which it would probably not be brought by the trustee if a decree were made in favor of the plaintiff.

Upon the filing of the answer the rule was argued by *Mr. George W. Biddle*, for the respondent.

OPINION, MR. CHIEF JUSTICE PAXSON:

When Bristor v. Tasker was called for argument on April 9, 1890, an examination of the docket entries as printed in appellant's paper-book disclosed this statement: "Bill dismissed, in order that the Supreme Court might decide the case." Supposing this statement to be correct, we quashed the appeal, in order that the case might be sent back to the court below for a decision upon the merits, under a practice of long standing in this court not to hear appeals in equity from decrees which are merely pro forma: See Dyer's App., 107 Pa. 446. Subsequently we ascertained that no such entry appeared upon the record of the case. The order was merely "bill dismissed," and, as now appears, after a full consideration of the case by the court below. We were thus misled by the printed copy of the docket entries, and were induced to quash an appeal which would not have been quashed but for this misstatement. Under these circumstances, we felt it our duty to enter the above rule.

The rules of court require a copy of the docket entries to be printed in the paper-book for obvious reasons. We have a right to expect counsel to print them correctly, as upon them serious results sometimes depend. It is too much to expect the members of this court to verify them by the record in every instance, which we would be obliged to do if we are not safe in relying upon the care and integrity of counsel. The docket entries must be a literal copy as they stand upon the records of the court below. To present them to us in an altered or

garbled form is an offence; if done intentionally and for the purpose of deceiving us, it would be an offence which would merit, and certainly receive, the punishment of disbarment.

In the present instance we are glad to be able to say, after investigation, it was not done with any desire or intent to mislead the court. The answer of the respondent and the affidavits submitted give us a history of the transaction, in which answer he has purged himself of intentional wrong doing. He appears to have been under the impression that the court below had decided the case without a consideration of its merits, and embodied this idea in the docket entries, without realizing that it was improper and might mislead. He says in his answer: "Respondent had never before prepared a paper-book to be used in the Supreme Court; consequently, he had no previous experience, and was not aware that the adding the words 'in order that the Supreme Court might decide the case,' after 'bill dismissed,' was an offence, because he then supposed that was the proper entry."

We have no desire to deal harshly with the respondent, and are willing to accept a plea of inexperience, when we would not do so from an older practitioner. Under all the circumstances, we have come to the conclusion that the respondent has been sufficiently punished for his indiscretion by the notice we have taken of this matter, and the rule upon him is

Discharged.

The appeal taken by Mary E. Tasker Bristor, having been reinstated, was argued on April 25, 1890, *Mr. M. A. DeLong Van Horn*, for the appellant:

The deed is revocable upon the equitable ground that the plaintiff was misled by her grandfather and mother, and executed it under a mistake, which was partly one of fact, without knowing that the attorney, who should have protected her, was also mistaken in supposing that her deed was to be like that of her married sister: Russell's App., 75 Pa. 269. It is revocable, also, because it was not executed in contemplation of marriage, and therefore, having no reason to support it, it passed no present interest to anybody but herself: Neale's App., 104 Pa. 217; Wells v. McCall, 64 Pa. 214; Rick's App., 105 Pa. 528; Rea v. Trust Co., 16 W. N. 48. Under the limi-

tation contained in it, she remained the owner of the fee: Dodson v. Ball, 60 Pa. 493; Yarnall's App., 70 Pa. 335; Carson v. Fuhs, 131 Pa. 256. The absence of a power of revocation is a circumstance throwing upon beneficiaries the burden of proof to show a distinct intention to make the deed irrevocable: Miskey's App., 107 Pa. 611; Thompson v. Carmichael, 122 Pa. 478; Bigham's App., 123 Pa. 262. Here, all parties agree that a mistake was made and that the deed should be set aside.

*Mr. W. Henry Sutton*, for the trustee.

OPINION, MR. JUSTICE GREEN:

The bill in this case is filed by the cestui que trust against her trustee, and also against the guardian of her children. The trustee filed an answer admitting all the facts set forth in the bill, and the guardian, a corporation, stating that it had no knowledge of the facts, said that it had inquired as to their truth, and from information received knew of no reason for doubting their truth. The more correct practice would have been to refer the case to a master, and have him to take testimony and make a report upon the facts alleged in the bill. Then any decree which the court might have made would have been founded upon facts established by proof, and not upon the mere allegations of the bill admitted by the answer. A case might easily arise upon the latter mode of proceeding which could not command the confidence of a court, and which, if permitted to prevail, might work great injustice to persons ultimately interested. It is not necessary, however, for us to hesitate in proceeding upon the facts set out in the bill, and admitted in the answer, since it does not appear that any persons are interested in the trust except the cestui que trust and her trustee.

By the terms of the deed the grantor's property was all conveyed by the cestui que trust to the trustee in trust to receive the rents, issues, and profits of the real estate, and the interest, income, and dividend of the personal estate, and pay it all over to the grantor as received, or to let her receive it directly, during the whole term of her life, and after her death in trust for the use of such persons as she might appoint, and, on failure of appointment, in trust for her right heirs. In such a case as

this, we have several times decided that the trust is a mere passive trust, which can be terminated at any time, at the mere will of the cestui que trust, who may demand a reconveyance of the whole estate from the trustee. The reason that she has such control over the trust is that she alone has any interest in the trust property, being entitled to the whole income of the estate during her life, with a power of absolute disposal of the corpus of the estate, by way of appointment, to any persons she may please, and, on failure of any appointment, the estate to go to her heirs. This gives to the cestui que trust really a fee-simple estate, and we so held in the cases of Dodson v. Ball, 60 Pa. 492; Yarnall's App., 70 Pa. 335; and in other cases there cited. It may be added that in the present case the cestui que trust had the power under the deed to direct the absolute sale and disposal of the whole trust property during her life, and the reinvestment of all the proceeds in such manner as she pleased. If the question were directly before us, it can scarcely be doubted that, under the authorities cited and the manifest principles applicable to the subject, we would hold the estate of the cestui que trust to be an absolute fee-simple estate, which would enable her to terminate the trust at any time she might so elect.

There are, however, ample reasons found in the facts set out in the bill, and admitted in the answer, for granting the relief prayed for. The bill explicitly states that, at the time of the execution of the deed of trust, the plaintiff was a single woman, without any contemplation of marriage, and had no motive or reason for making a trust which would deprive her of an absolute ownership of her property. She also alleges that she was induced to make the deed by her mother and grandfather, in order to induce her sister, who was married to a spendthrift husband, to execute a similar deed of trust for her property; and, further, that she was informed by her mother and grandfather at the time, that, as she was a single woman, not contemplating marriage, her case was different from that of her sister, and that she could at any time thereafter, if dissatisfied with the trust, revoke the same; that she afterwards, and at the request of her grandfather and mother, called upon the gentleman who was the counsel for them, and informed him of her desire and its purpose, and that the counsel thereupon pre-

### Opinion of the Court.

pared three deeds of trust, one for her mother, one for her sister, and the other for herself, all of which were duly executed, and in all of them there was no power of revocation ; that the counsel supposed that the deed for the plaintiff was to be prepared like the others, without a power of revocation, and acting upon this mistake he prepared her deed in the same manner as the others, and did not inform her that it did not contain a power of revocation, nor even as to what were the contents of the deed of trust signed by her. She further states that she executed the deed of trust prepared for her, believing that she had power to revoke or change the same at any future time she might desire to do so, and remained of that belief until about two years before the bill was filed, when she was informed that there was no power of revocation in the deed by an attorney to whom she applied to have the trust set aside. She also says that she was not advised, and did not know, that if she married and bore children she could use no part of the principal of her estate. It is also the fact that the deed of trust was made to her own grandfather.

The facts of this case are much stronger in favor of the relief sought than in the cases heretofore considered by this court. The motive of the conveyance was entirely foreign to any purpose or desire to strip the plaintiff of the control of her property. It was entirely for the sake of a sister, who, being married to a spendthrift, had an urgent reason for protection by an irrevocable deed of trust, but whose action it was represented to the plaintiff would be promoted by a similar deed on her part. Then too, it was her mother and her grandfather who asked and urged her to make the deed. To an appeal coming from such a source she would be peculiarly sensitive, and very properly so. To every statement made by them to her she naturally gave the most implicit confidence, as she was justified in doing. When they told her she could at any time revoke the deed, she had a right to believe them, and to act upon the faith of their statement. It was a mistake for them to tell her this, but it was an innocent mistake on their part. It not only misinformed her, but would operate to prevent her from employing independent counsel for herself, and would naturally lead her to resort to their counsel for the preparation of the necessary deed. And here, again, she became the victim of

another innocent, but injurious, mistake. The counsel employed, knowing the object of the whole transaction to be the protection of the married sister, naturally supposed that the three deeds were to be alike, and that there was no necessity of his informing the plaintiff, either that there was no power of revocation in the deed intended for her, or that without such a power the deed would be irrevocable. She executed the deed under the influence of all these mistakes, and hence presents a strong and well-recognized case for the intervention of equity. Moreover, the entire object and purpose of the execution of the deed by her were fully accomplished at once, and they have no further existence. The married sister and her husband did execute an irrevocable deed of the sister's property, and all reason for continuing the trust as to the property of this plaintiff ceased forthwith. All of the considerations which we have thus indicated are potential in equity in securing the relief now invoked.

The subject of granting such relief is not at all new, either in England or in this commonwealth. This court has administered such relief in several cases, and after the most mature deliberation. In Russell's App., 75 Pa. 269, which is a noted and a leading case, the whole subject was so exhaustively discussed by the learned master in the court below, and by this court, that it is no longer necessary to review the authorities or investigate the doctrine. It is the accepted and well-settled law in this commonwealth, illustrated and enforced in a number of important causes. We there held that the absence of a power of revocation in such a deed is a circumstance to be taken into account, and entitled to more or less weight, according to the other circumstances of the case in granting the relief sought. Mr. Chief Justice AGNEW, in delivering the opinion of the court, said: " It may be admitted, also, that the mere omission of counsel to advise the insertion of a power to revoke will not alone be a ground in equity to set aside a voluntary conveyance. But the absence of such a power, and the failure of counsel to advise upon it, are circumstances of weight, when joined to other circumstances tending to show that the act was not done with a deliberate will. Therefore, when the facts show that the instrument was executed without advice or reflection, and without an in-

Opinion of the Court.

tention to bind the party after the reasons and motives for executing it have passed away and the party is again sui juris, a court of equity will and ought to relieve, as against mere volunteers claiming without consideration or a reasonable motive for continuing the donor's disability. . . . . The cases cited by the master show very distinctly that the actual intent of the donor is necessary, and, in the absence of a certain intent to make the gift irrevocable, the omission of a power to revoke is prima facie evidence of a mistake, and casts the burden of supporting the settlement upon him who, without consideration or a motive to benefit him or protect the donor, claims a mere gratuity against one who is sui juris and capable of taking care of his own estate. The mistake is not one simply of law. That would be so if the settlor, in full view of all the clauses and provisions in the deed, would interpret them for himself as being in law adequate to confer a power of revocation upon him, when in truth the law would not so expound the instrument. But in a case such as this the mistake is one of fact, so mixed with the legal effect of the writing that equity will use the mistake of fact as means of relief."

In Miskey's App., 107 Pa. 611, we applied this doctrine in a different state of circumstances, and set aside a voluntary deed, partly because of the absence of a power of revocation and of the absence of proof of a distinct intention to make the gift irrevocable. The exertion of parental influence, and the fact that the grantor had no independent counsel, were circumstances which we regarded as of weight in determining to set aside the deed. In Rick's App., 105 Pa. 528, we set aside a voluntary deed because of the absence of a power of revocation, because it appeared that the grantor had no intention to deprive herself of all control of her property, because she had been misled by her brother on the subject of revocation, and because the deed was improvident. The present Chief Justice said in the opinion: "If Mrs. Peiffer signed the deed under the representation that it could be revoked, then a fraud was practiced upon her; if, under the advice that she could not insert a power of revocation, she was wrongly advised; she acted under a mistake partly of law and partly of fact; she was misled by those whose duty it was to inform her, and upon whom she had a right to rely with confidence. . . . .

Opinion of the Court.

There is a line of English cases which hold that, in the absence of any motive for an irrevocable gift, it is unreasonable that a voluntary conveyance should be without a power of revocation, [citing several cases.] In the last case, [Hall v. Hall, L. R. 8 Ch. 430,] the rule was laid down as follows: 'The absence of a power of revocation in a voluntary deed, not impeached by any undue influence, is, of course, material where it appears that the settler did not intend to make an irrevocable settlement, or where the settlement is of such a nature, or was made under such circumstances, as to be unreasonable and improvident, unless guarded by a power of revocation.'"

Further discussion seems quite unnecessary. Other instances in which we have administered this kind of relief will be found in the opinions in the cases we have cited. We think the relief prayed for here should be granted, because there was no intention to make an irrevocable gift; because the whole purpose of the deed was accomplished when the plaintiff's married sister executed the deed for her property,—after that, there was no motive or reason for continuing the present deed; because the deed contained no power of revocation; because the plaintiff was misled by her mother and grandfather telling her she could at any time revoke the deed; because she had no independent advice; because counsel who prepared the deed did not inform her of the necessity of a power of revocation, and of the effect of its absence; and because the deed is improvident and unreasonable, and was not made in contemplation of marriage.

The decree of the court below is reversed, at the cost of the appellee; the bill of the plaintiff is reinstated, and the record is remitted, with instructions to the court below to enter a decree granting the relief prayed for, in accordance with this opinion.